# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Maersk Line Limited ) ASBCA Nos. 59791, 59792
)
Under Contract Nos. N00033-06-C-3305 )
N00033-06-C-3306 )

APPEARANCES FOR THE APPELLANT:   Robert E. Korroch, Esq.
William A. Wozniak, Esq.
Williams Mullen
Norfolk, VA

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
Navy Chief Trial Attorney
Tricia A. Nicewicz, Esq.
Gordon D. Ivins, Esq.
Allison M. McDade, Esq.
Trial Attorneys
Military Sealift Command
Norfolk, VA

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER

In these consolidated appeals, appellant Maersk Line Limited (Maersk) seeks amortized "hull depreciation costs" that are said to result from the convenience terminations of two dry cargo time charter contracts. Under a time charter, the owner is responsible for crewing and maintaining the vessel, while the charterer may employ the vessel for specified purposes. Both dry cargo time charters at issue here were follow-on contracts. The principal issue is whether we have jurisdiction, with the government asserting that Maersk's present claim differs from the claim that it submitted to the contracting officer. We dismiss the appeals for lack of jurisdiction.

## FINDINGS OF FACT

### A. *The 2001 Contracts*

1. Effective May 22, 2000, the Military Sealift Command (MSC) awarded Contract No. N00033-00-C-3201 to Maersk for the dry cargo time charter for the M/V *LTC John U.D. Page* (M/V *Page*) (ASBCA No. 59791 (59791) R4, tab A-1 at 1-2, tab A-3 at 13). In addition, effective May 22, 2000, MSC awarded to Maersk Contract No. N00033-00-C-3202 for the dry cargo time charter for the M/V

*SSG Edward A. Carter, Jr.* (M/V *Carter*) (ASBCA No. 59792 (59792), R4, tab A-1 at 1-2, tab A-3 at 13) (the 2001 contracts). Each of the 2001 contracts was for a term of up to and not to exceed 1,795 days, and each was for the transportation and storage of ammunition in support of the Army's Prepositioning Program (59791 R4, tab A-1 at 2, tab C-44 at 354; 59792 R4, tab A-1 at 2, tab C-29 at 313).

2. Both the M/V *Page* and the M/V *Carter* had been container ships (tr. 11). Maersk acquired the M/V *Page* in October 2000 for $10,000,000, and the M/V *Carter* in February 2001 for the same price (tr. 47-48; exs. A-3, -4).

3. It is undisputed that, in the interval between award and delivery of the vessels under each of the 2001 contracts, Maersk incurred costs to modify both the M/V *Page* and the M/V *Carter* to enable both vessels to transport and store ammunition (tr. 11, 17). Maersk installed additional equipment on both vessels to make them suitable for the transportation and storage of ammunition (tr. 11-12). This equipment included specialized cranes, together with air conditioning, dehumidifier systems, and sprinkler systems for the cargo holds, as well as tent-like structures above the decks called cocoons, which could house additional ammunition containers (tr. 11-12; 59791, R4, tab D-66 at 541; 59792, R4, tab D-60 at 545). Maersk depreciated the costs to make each vessel suitable to transport and store ammunition over the 59 months of the original contract period for each vessel (tr. 18).

4. Performance of the 2001 M/V *Carter* contract lasted for its full term and was completed on or about May 13, 2005 (59792, R4, tab A-23 at 73). Performance of the M/V *Page* contract, by contrast, was terminated early, and by date of October 27, 2005, MSC issued unilateral Modification No. P00028, providing for payment to Maersk of $2,190,571 in early redelivery costs (59791, R4, tab A-29 at 88).

B. *The 2006 Follow-On Contracts*

5. Following completion of the 2001 contracts, Maersk submitted a proposal to MSC by date of November 9, 2005, for follow-on contracts for both the M/V *Page* and the M/V *Carter* (59791, R4, tab B-42 at 142; 59792, R4, tab B-27 at 98). Significantly, Maersk stated in its proposals that it did not foresee "any work required...to 'convert [either] vessel to a more useful military configuration'" (*id.*). We find that neither proposal for the 2006 follow-on contracts included any unrecovered depreciation from the 2001 contracts, or other acquisition costs (tr. 21, 26, 97; 59791 R4, tab B-43 *passim*, 59792 R4, tab B-28 passim).

6. MSC thereafter awarded the two follow-on contracts at issue here. Effective February 1, 2006, MSC awarded Contract No. N00033-06-C-3305 to Maersk for the dry cargo time charter of the M/V *Page*, and, effective December 8, 2005, it

awarded Contract No. N00033-06-3306 for the dry cargo time charter of the M/V *Carter* (collectively, the 2006 contracts) (59791, R4, tab C-44 at 343; 59792, R4, tab C-29 at 300).

7. The 2006 contracts contained various standard clauses, including Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (OCT 2003) (59791, R4, tab C-44 at 352; 59792, R4, tab C-29 at 311). Each contract's Termination for the Convenience of the Government clause was separately set out and was identical to that appearing in FAR 52.212-4(l) (59791, R4, tab C-44 at 372; 59792, R4, tab C-29 at 333).

8. The 2006 contracts contained identical Cancellation Fee clauses, which provided:

> The contractor and Government agree the purpose of this clause is to induce the contractor to offer to provide and to provide the required services when the contractor otherwise would not offer to provide them because of the contractor's inability to recover its out-of-pocket costs in the event the Government does not exercise an option to extend the term of the contract or terminates the contract for the convenience of the Government.
>
> In the event the Government does not exercise an option to extend the term of the contract or terminates the contract for convenience, the contractor shall be entitled to not-to-exceed cancellation costs subject to the following conditions ....
>
> "Cancellation costs" means, and only means, costs specifically identified by the contractor in its proposal and actually incurred by the contractor between contract award and vessel delivery to the Government including, and limited to, the following categories of costs: costs incurred by the contractor for vessel acquisition, reflagging costs and modification, or conversion costs, and only to the extent such modification, or conversion costs were incurred in order for the vessel to meet contract requirements.

(59791, R4, tab B-43 at 167; 59792, R4, tab C-29 at 326-27)

3

9. MSC redelivered the M/V *Page* to Maersk on June 22, 2010, which was before expiration of the contract (59791, R4, tab C-62 at 500-01). MSC also redelivered the M/V *Carter* to Maersk early (59792, R4, tab C-57 at 497-98). Maersk was unable to put either ship to work after the terminations and they laid idle (tr. 19).

10. By Modification No. P00020 to the M/V *Page* contract dated September 28, 2011, the parties agreed to a full and complete equitable adjustment for the early redelivery of the M/V *Page* "[w]ith the exception of hull depreciation" (59791, R4, tab C-64 at 505, 507). The parties agreed that Maersk "reserves the right to submit a request for equitable adjustment for unrecovered hull depreciation" (*id.* at 507). In a September 28, 2011 Memorandum to the File attached to the modification, the contracting officer and a contract specialist recited that, in March 2011, Andrew Rabuse, Maersk's General Manager for Government Ship Management, explained that hull depreciation "represents the costs associated with converting the vessel for military use by installing cranes, AC/DH systems, cargo hold sprinkler systems and other modifications necessary to meet contract requirements" (59791, R4, tab C-64 at 510).

11. By date of September 25, 2013, Maersk submitted a "Request for Contracting Officer Final Decision on [Maersk's] Unrecovered Costs Resulting From Early Termination of [the 2006 Contracts]" covering both the M/V *Carter* and the M/V *Page* (the claim) (59791, R4, tab D-66 at 523-47). We find that the claim related solely to the costs to modify both vessels for the purpose of transporting and storing ammunition, and not to vessel acquisition. Maersk sought:

> A contracting officer final decision regarding (i) unrecovered costs, resulting from the early termination of [the M/V *Page* contract], in the amount of $480,000 incurred for the modification of the M/V PAGE to comply with applicable contract requirements (hereinafter, the "Hull Depreciation Costs"), and (ii) unrecovered costs, resulting from the early termination of [the M/V *Carter* contract], in the amount of $242,500 incurred for the modification of the M/V CARTER to comply with applicable contract requirements.

(59791, R4, tab D-66 at 523) Maersk asserted that it had "incurred over $10,000,000 in modification costs to the M/V PAGE after award and prior to vessel delivery" and that it "opted to depreciate [those] modification costs...over the terms of both contracts" (59791, R4, tab D-66 at 525). Maersk noted that, in prior negotiations over the September 28, 2011 termination modification for the M/V *Page* contract (*see* finding 10), it had "asserted the right to payment of $450,000 for 'Hull Depreciation' which consisted of 'depreciation of the vessel's conversion costs

4

incurred from the first ammo contract of this vessel, including installation of cranes, AC/DH systems, cargo hold sprinkler systems, etc. required to perform contract requirements" (59791, R4, tab D-66 at 526). Maersk contended that the early termination of the contract "resulted in unrecovered ["Hull Depreciation"] costs for the contract periods that were not performed" (*id.*). Summarizing, Maersk asserted that the claim was for:

> (i) [U]nrecovered costs, resulting from the early termination of [the contract], in the amount of $480,000 incurred for the modification of the M/V PAGE to comply with applicable contract requirements (hereinafter the "Hull Depreciation Costs"), and (ii) unrecovered costs, resulting from the early termination of [the contract], in the amount of $242,500 incurred for the modification of the M/V CARTER to comply with applicable contract requirements.

Maersk explained that:

> The claim...with respect to reimbursement of Hull Depreciation Costs for the M/V PAGE is equally applicable to unrecovered vessel modification costs for the M/V CARTER, as the vessels are similarly situated with respect to the incurred modification costs, the depreciation schedule...as well as to the application and effect of the relevant contract clauses.

(59791, R4, tab D-66 at 524, 532-33) Maersk employed the term "Hull Depreciation Costs" on all but one page of its claim to refer to the costs that it sought (*id.* at 524-39). Mr. Rabuse (*see* finding 10) certified the claim on behalf of Maersk (*id.* at 533).

12. In an email to the contracting officer dated March 24, 2011, Mr. Rabuse offered:

> [F]urther clarification to our line item "Hull Depreciation" as it pertains to the [claim]. Upon review, we may have some terminology confusion with the "Hull Depreciation" line item. This is the depreciation of the vessels [sic] conversion costs incurred from the first [2001] ammo contract of this vessel, including installation of cranes, AC/DH systems, Cargo Hold sprinkler systems, etc.. all of which are required for the conduction [sic] of this contract. In the effort to offer the government a more balanced price

5

proposal, [Maersk] depreciated these conversion costs over 10 years.

(59791 R4, tab D-66 at 540-541; 59792 R4, tab D-60 at 544-45; tr. 75-76)

13. At trial, the contracting officer testified, and we find, that after reviewing the claim and contemporaneous documents, her "understanding of hull depreciation was that it covered the modification and conversion costs of the *Page* and the *Carter* under the [2001] contracts" (tr. 80-81). She further testified that "[t]hroughout Maersk's correspondence with me, during the claim, [hull depreciation] was always described as the modifications, including the cranes, AC/DH, the cargos [sic] hold sprinklers" (tr. 86-87). The contracting officer testified that she relied upon Mr. Rabuse's explanation to this effect in his March 24, 2011 email in evaluating Maersk's claim (tr. 73-79; *see* finding 12).

14. By date of July 30, 2014, Maersk supplemented its claim (59791, R4, tab D-69 at 554-60; *see* finding 11). Maersk requested that the contracting officer decide "that MSC shall reimburse [Maersk] $480,000 in settlement of the Hull Depreciation Costs, based on the 'reasonable charges' provision of [the 2006 M/V *Page* contract's] T4C clause [*see* finding 7], as supplemented by the operation of the [M/V *Page*] Contract's Cancellation Fee Clause" (*see* finding 8; 59791 R4, tab 69 at 555). The contracting officer testified, and we find that, in thus seeking recovery for hull depreciation costs, Maersk made no mention of vessel acquisition costs (tr. 80).

15. By date of October 17, 2014, the contracting officer rendered separate final decisions denying Maersk's claim as supplemented (59791, R4, tab E-70 at 562-65; 59792, R4, tab E-64 at 567-570). We find that, with respect to the M/V *Page* contract, the contracting officer's decision rested on the premise that, in its claim, Maersk sought "reimbursement for vessel conversion costs" (59791, R4, tab E-70 at 562). With respect to the M/V *Carter* contract, she used the identical terms (59792, R4, tab E-64 at 567). We further find that neither decision purported to address a claim based upon reimbursement for vessel acquisition costs.

16. By date of January 13, 2015, Maersk filed a timely notice of appeal in each of these appeals. In its complaint regarding the M/V *Page* in ASBCA No. 59791, Maersk sought the Board's *de novo* review of its "request for compensation for vessel conversion costs" (59791 compl. at 1). Maersk alleged:

> Prior to delivering the M/V PAGE in 2001 under a preceding contract, [Maersk] incurred over $10,000,000 in modification costs.... Under [Maersk's] accounting system, under the Contract for Option Year[s] [4 and 5], the depreciation for these required modifications is $2,500

per day ($75,000 per month) based on $10,000,000 in conversion costs.... Based on 192 days remaining on the Contract, ...the actual "hull depreciation" amount reflects the amortized cost of $2,500 per day for 192 days ($480,000).

(59791 compl. ¶¶ 22-25) Maersk's complaint regarding the M/V *Carter* alleged the identical rationale of modification costs as the basis for the $242,500 sought under that contract (59792 compl. ¶¶ 22-23, 25). By order dated May 26, 2015, we granted the parties' joint motion to consolidate both appeals.

17. By date of December 13, 2015, Maersk filed a first amended complaint in ASBCA No. 59791. In contrast to its allegations regarding modification costs in the complaint (*see* finding 16), Maersk alleged in the first amended complaint that, "[p]rior to delivering the M/V PAGE in 2001 under a preceding contract, [Maersk] incurred over $10,000,000 in vessel acquisition costs," which it depreciated over ten years (compl. ¶ 22). Maersk further alleged that, under its accounting system for the contract's Option Years 4 and 5, "the hull depreciation was $2,500 per day...based on $10,000,000 in vessel acquisition costs" (*id.* ¶ 23).

18. In its first amended complaint in ASBCA No. 59792, Maersk made substantially identical allegations in Count I regarding entitlement to "unrecovered hull depreciation" costs for the M/V *Carter* as those regarding the M/V *Page* (compl. ¶¶ 33, 35).

19. By substantially identical letters to the contracting officer dated February 17, 2016, Maersk submitted "supplement[s] to our previously-submitted requests for Contracting Officer's Final Decision[s]" relating to both the M/V *Page* and the M/V *Carter* contracts (ex. A-1 at 3, 7; tr. 88, 91-92). In the letter pertaining to the M/V *Page*, Maersk stated that its records show that it paid "$10,000,000 for the M/V PAGE, depreciated those costs over 10 years, and claims $480,000 in charges arising from early redelivery and termination" (ex. A-1 at 7). In this supplement, Maersk made no mention of "conversion costs incurred for the first ammo contract of this vessel, including installation of cranes, AC/DH systems, Cargo Hold sprinkler systems" that it had previously told the contracting officer underlay its claim (*see* finding 12). Maersk's letter to the contracting officer of the same date regarding the M/V *Carter* was substantially identical. In the letter regarding the M/V *Carter*, Maersk stated that it "paid "$10,000,000 for the [vessel], depreciated those costs over 10 years, and the claim for $242,500 pertains to those unrecovered charges arising from early termination" (ex. A-1 at 3).

20. Following the convenience terminations of both contracts, Maersk sold each vessel for scrap. By date of March 19, 2015, Maersk sold the M/V *Page* for the

aggregate price of $6,030,129.50 (ex. A-2; tr. 60-65). Maersk sold the M/V *Carter* for an amount that does not appear in the record.

21. At trial, Maersk's chief financial officer for its non-liner side testified that hull depreciation "represented the depreciation expense, the, actually, the unrecovered depreciation expense for the vessel, itself, the actual acquisition of the vessel... It wasn't [a] conversion cost" (tr. 21). He also testified that Maersk's previous characterization of hull depreciation costs as conversion costs (*see* finding 11) was "a mistake" (tr. 21). We do not find these disavowals credible, inasmuch as they explicitly contradict Maersk's certified claim (*see* finding 11), and there is no evidence that Maersk told the contracting officer that its representations had been erroneous (*e.g.*, tr. 30-33).

22. The contracting officer testified, and we find, that to decide a claim founded on vessel acquisition costs, she would have asked for different supporting documents from those that she considered for a claim for modification and conversion costs. She testified that she would have looked for "any kind of bill of sale,...a depreciation schedule, and the, any other documents that would support what the value of the vessel was, for certain periods of time" (tr. 98). She testified that none of these documents were provided to her before she issued her final decision, and none were in the contract file (tr. 98-99).

### DECISION

In disputing Maersk's claims regarding both the M/V *Page* and the M/V *Carter,* the parties advance multiple arguments on the merits. In our view, however, the issue of jurisdiction is dispositive of both appeals, and we accordingly address it below.

Before trial, we ruled on various motions by both parties. We denied the parties' cross-motions for summary judgment, and ruled on three other motions. *Maersk Line, Limited,* ASBCA Nos. 59791, 59792, 16-1 BCA ¶ 36,405. In disposing of those motions, we denied MSC's motion to dismiss for lack of jurisdiction, concluding, from the record as it then stood, that MSC had failed to demonstrate that different operative facts underlay the claim and the first amended complaints. *Id.* at 177,512-13. In addition, we denied both parties' motions for summary judgment. We denied MSC's motion in part because there were triable issues regarding the nature of the costs. *Id.* at 177,514. The triable issues revolved around the question of whether the costs at issue were for the conversion of the vessels to make them ready for contract performance, or were simply for Maersk's initial acquisition of the vessels. We characterized the issues regarding the claims as follows:

8

> Maersk tells us that the costs that it seeks to recover are "depreciation of the costs of its *acquisition* of the vessels that was not recovered because of MSC's early redelivery and termination of the 2006 Contracts. By contrast, MSC asserts that the costs constitute "those associated with the vessels' modification to comply with the 2001 Contract requirements." [Citations omitted]

*Id.* at 177,514. We concluded that the parties' arguments regarding the nature of the costs claimed presented a triable issue, precluding summary judgment. *Id.* We added that our understanding of the nature of the costs at issue would be aided by extrinsic evidence. *Id.*

After trial, MSC chiefly contends that we lack jurisdiction over the present claims because Maersk did not present them until after it had appealed the denial of its claims for conversion and modification costs to the Board (Respondent's Post-Hearing Brief (resp. br.) at 9-12). In particular, MSC asserts that Maersk's original claims under the 2001 contracts – submitted on September 25, 2013 (finding 11) – were confined to the modification and conversion costs to add cranes, AC/DH systems, cargo hold sprinkler systems, and above deck cocoons, and made no mention of vessel acquisition costs. By contrast, MSC argues, "Maersk's amended complaint [in these appeals] asserted for the first time its claims for the depreciation of vessel acquisition costs" (resp. br. at 11).

In response, Maersk's chief argument is that this issue has been resolved before. Maersk insists that "this action for unrecovered depreciation of the costs of acquiring the vessels arises from the same operative facts that were relied upon in the claims and seeks the same relief" (app. br. at 6). Maersk also argues that "MSC has not produced any facts to cause the Board to reverse its previous holding that 'MSC fails to demonstrate a decisive difference between the claim as asserted to the contracting officer and the first amended complaints'" (app. br. at 6).

At trial, we received extrinsic evidence regarding the nature of the costs included in Maersk's claims. Now, aided by a fuller record than the one before us on the parties' cross-motions for summary judgment, we conclude that the claims articulated in Maersk's first amended complaints in these two appeals are different claims from those submitted to the contracting officer. We accordingly lack jurisdiction over the present claims. We reach this conclusion for three principal reasons.

*First*, it is familiar that we lack jurisdiction to consider new claims not presented to the contracting officer. In *Lee's Ford Dock, Inc. v. Secretary of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017), the court of appeals held that:

9

> The Board may not consider "new" claims [that] a contractor failed to present to the contracting officer. *Santa Fe [Engineers, Inc. v. United States]*, 818 F.2d [856] at 858 [(Fed. Cir. 1987)]. A claim is new when it "present[s] a materially different factual or legal theory" of relief. *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015). Materially different claims "will necessitate a focus on a different or unrelated set of operative facts." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990).

*See also Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (reciting that the same claim before the court or Board must have been considered by the contracting officer). In similar circumstances, we have held that we lack jurisdiction over claims for which the contracting officer has not had "the opportunity to investigate and pass on" in the first instance. *Bay Decking Co.*, ASBCA No. 33868, 89-2 BCA ¶ 21,834 at 109,848, *accord The Jonathan Corp.*, ASBCA No. 47059, 95-1 BCA ¶ 27,390 at 136,537 (holding no jurisdiction over breach claim alleged in complaint for first time); *L.T.D. Builders*, ASBCA No. 28005, 83-2 BCA ¶ 16,685 (holding no jurisdiction over claims first raised in complaint); *Modular Devices, Inc.*, ASBCA No. 24198, 82-1 BCA ¶ 15,536 (same).

*Second*, Maersk's initial claims undeniably related to modification and conversion costs for the two vessels. The record reflects that, during contract performance, Mr. Rabuse, Maersk's General Manager for Government Ship Management, authoritatively explained that "Hull Depreciation" costs were "the costs associated with converting the vessel for military use by installing cranes, AC/DH systems, cargo hold sprinkler systems and other modifications necessary to meet contract requirements" (finding 10). On March 24, 2011, Mr. Rabuse repeated his clarification of "Hull Depreciation" as capturing conversion costs (finding 12).

Mr. Rabuse's clarifications are consistent with terms of the claim itself. We have found that the September 25, 2013 claim, as supplemented by date of July 30, 2014, related solely to modification costs, not to vessel acquisition costs (findings 11, 14). To that end, Maersk told the contracting officer that it wanted a decision for "$480,000 incurred for the modification of the M/V PAGE...and $242,500 incurred for the modification of the M/V CARTER" (finding 11). As we have found, Maersk did not present these costs as relating to vessel acquisition (findings 11-15).

10

The contracting officer's testimony similarly leaves no doubt that she understood that the claim related to conversion costs, not vessel acquisition costs.* She testified that, in evaluating the claim, she concluded that the nature of the costs grouped under the rubric of "hull depreciation," – the only cost category excepted from Modification No. P00020 (finding 10) – represented conversion costs chiefly because of Mr. Rabuse's March 24, 2011 email to the contracting officer stating that "[h]ull [d]epreciation" costs represented "the depreciation of the vessels [sic] conversion costs incurred from the first [2001] ammo contract of this vessel, including installation of cranes, AC/DH systems, Cargo Hold sprinkler systems, etc." (finding 12).

The contracting officer's testimony regarding her understanding of the claim is mirrored in her decision. She stated in her decision that, for the two vessels involved, Maersk sought "reimbursement for vessel conversion costs" (finding 15). As we have found, she did not purport to address a claim in either decision based upon reimbursement for vessel acquisition costs (*id.*).

*Third*, the claims in their present iterations are undeniably predicated upon the acquisition costs for the two vessels. Maersk said explicitly in its allegations in the first amended complaints that it is entitled to hull depreciation costs "based on $10,000,000 in vessel acquisition costs" (findings 17-18). Maersk echoed that basis for its claim in its February 17, 2016 supplemental requests for contracting officer's final decisions regarding each contract. Maersk asserted in one that its records show that it "paid $10,000,000 for the M/V PAGE, depreciated those costs over 10 years, and claims $480,000 in charges arising from early redelivery and termination" (finding 19). In the other letter, Maersk stated that it "paid $10,000,000 for the [vessel], depreciated those costs over 10 years, and the claim for $242,500 pertains to those unrecovered charges arising from early termination" (*id.*). Maersk's current litigating position is consistent with recast claims. Thus, Maersk now tells us that "this action [is] for unrecovered depreciation of the costs of acquiring the vessels" (appellant's post-hearing brief at 6).

While Maersk has recast its claims as predicated upon acquisition cost, it is evident that it has abandoned its original claims predicated upon conversion and modification costs. However, no claims based on acquisition costs were ever submitted to the contracting officer (findings 11-15). In consequence, we lack

---

* The test of whether a claim is "new" is an objective one; thus, to some extent the contracting officer's subjective view is immaterial. Nevertheless, the contracting officer may, as she did here, shed light upon the different factual predicates differentiating the old and new claims.

11

jurisdiction over the claims based on acquisition costs. We accordingly dismiss both ASBCA No. 59791 and ASBCA No. 59792 for lack of jurisdiction.

In view of our disposition of the appeals on jurisdictional grounds, we do not address the parties' other arguments on the merits.

CONCLUSION

ASBCA No. 59791 and ASBCA No. 59792 are each dismissed for lack of jurisdiction.

Dated: April 9, 2019

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59791, 59792, Appeals of Maersk Line Limited, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals