# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Odyssey International, Inc. ) ASBCA No. 62062
)
Under Contract No. W912DR-15-C-0038 )

APPEARANCES FOR THE APPELLANT: Brian C. Johnson, Esq.
H. Burt Ringwood, Esq.
Alan R. Houston, Esq.
Spencer W. Young, Esq.
Strong & Hanni Law Firm
Salt Lake City, UT

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
Engineer Chief Trial Attorney
Scott C. Seufert, Esq.
Engineer Trial Attorney
U.S. Army Engineer District, Baltimore

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

Pending before the Board is the motion to dismiss for lack of jurisdiction submitted by respondent, the United States Army Corps of Engineers (government). The government alleges that the Board lacks jurisdiction to entertain Counts I, II, and III of the complaint filed by appellant, Odyssey International, Inc. (Odyssey), because they were not presented to the contracting officer for a final decision. The government additionally asserts that the Board lacks jurisdiction to entertain Odyssey's claim for consequential damages because the asserted damages are too remote and speculative, because Odyssey does not assert a sum certain, and because they were not presented to the contracting officer. For the reasons stated below, we grant the government's motion to dismiss with regard to Odyssey's claim for consequential damages (compl. ¶ 123), Count I regarding contract withholding (compl. ¶¶ 125.c, 128) and Count II regarding an implied-in-fact contract for payment of invoices or to respond to requests for information (RFI) within 14 days (compl. ¶¶ 133-137). We deny the government's motion with regard to the remainder of Odyssey's complaint.

## STATMENT OF FACTS (SOF) FOR PURPOSES OF THE GOVERNMENT'S MOTION

The government awarded contract W912DR-15-C-0038 for construction of the Component Rebuild Facility at the Letterkenny Army Depot, Chambersburg,

Pennsylvania, to Odyssey on September 28, 2015 (compl. ¶ 30).[1] The design for the building included the use of "micropiles," a building foundation system that involves drilling small diameter holes into bedrock and inserting grout into any voids in the rock before inserting a metal pole and casing (compl. ¶ 17). The solicitation for the contract informed bidders to assume that two micropiles would be installed at each pile cap, for a total of 60 micropiles, with each micropile drilled to a depth of 10 feet into bedrock, with 15 feet of overburden soil (compl. ¶¶ 19-20). However, the solicitation also provided that the contractor would assume responsibility for the design and performance of the micropile foundation system, and that the contractor would need to obtain government approval for the micropile design (compl. ¶¶ 21-22). Odyssey raised micropile design issues at the preconstruction meeting on November 12, 2015, and the government told Odyssey to submit an RFI regarding the issue (compl. ¶¶ 36-37). Odyssey submitted an RFI, and in response, the government told it to prepare its micropile system design "independent of the assumptions provided in the contract for bidding purposes" (compl. ¶ 40). On March 16, 2016, Odyssey submitted another RFI to the government in which it described its increased costs for the micropile design recommended by its engineering subcontractor, and provided an alternative proposal that would be less expensive (compl. ¶ 45). Odyssey's micropile design called for the use of 80 micropiles, rather than the 60 micropiles specified for bidding purposes. The micropiles additionally were to be installed at greater depth than specified for bidding purposes, resulting in additional costs to Odyssey. (R4, tab 3a at 4-5) The increased costs for the micropile system were discussed in various meetings between Odyssey and the government, and on April 22, 2016 the government responded to Odyssey's RFI, stating in part that a request for proposal (RFP) would be issued to address the increased costs of the micropile design (compl. ¶¶ 46-49). On May 10, 2016, the government issued an RFP for the additional costs of the proposed micropile system as compared to the system specified for bidding purposes (compl. ¶¶ 50-51). The following day, May 11, 2016, Odyssey submitted its proposal in response to the RFP seeking $512,162.74 and 116 days of additional time (compl. ¶ 52). The government approved Odyssey's micropile design on May 13, 2016 (this approval did not address costs or delays) (compl. ¶ 56).

Upon receipt of government approval of the micropile design, Odyssey did not begin work, because the government had previously informed it that the RFP for additional micropile costs was not a notice to proceed and that it should not commence work on the subject of the RFP without a signed modification or directive to proceed (compl. ¶ 51). On May 18, 2016, Project Engineer and Contracting Officer's Representative Barry Treece and Contracting Officer's Representative Remigio Bollana, in separate email communications, told Odyssey to begin work on the micropiles despite the lack of an executed modification (compl. ¶¶ 59-61). Odyssey interpreted the emails

---

[1] Odyssey's non-jurisdictional factual allegations are assumed to be true for the purpose of this motion.

as a change order from the government and began work on the micropile foundation (compl. ¶ 62).

By letter dated June 2, 2016, the government canceled the proposed contractual change requested in the May 10, 2016 RFP (compl. ¶ 64). On August 2, 2016, the government informed Odyssey by letter that it was considering a change to the contract that would compensate Odyssey for 8 of the 20 additional micropiles (compl. ¶ 91). On September 23, 2016, the parties entered into a modification of the contract that compensated Odyssey in the amount of $54,800 and 4 additional days for the 8 additional micropiles (compl. ¶¶ 93-94). On January 23, 2017, Odyssey filed a request for equitable adjustment (REA) seeking compensation for the additional micropile costs (compl. ¶ 97). On March 27, 2017, the government found partial merit in Odyssey's REA and offered to settle for $141,400 plus 43 non-compensatory days (compl. ¶ 98). Odyssey rejected the government's offer on April 20, 2017 (compl. ¶ 99). On August 30, 2018, Odyssey submitted a second REA that was denied by the government on October 5, 2018 (compl. ¶¶ 112-13).

On January 8, 2019, Odyssey submitted a claim to the contacting officer. As the government's motion to dismiss for failure to submit its claims to the contracting officer depends upon the facts and legal theories asserted in Odyssey's claim, the allegations contained in the claim are addressed in detail. Odyssey's claim states that it is for "additional time, subcontract costs and extended overhead." (R4, tab 3a at 2) Odyssey asserts in its claim that it was concerned with the specification for contract line item (CLIN) 007 stating that, "[f]or bidding purposes, the contractor shall assume that 2 micropiles will be installed at each pile cap, with each micropile drilled to a depth of 10 feet into bedrock, with 15 feet of overburden soil" (id.). Odyssey encountered problems because the contracting officer failed to provide direction regarding the location of probe holes and its drill and probe logs show that it had to drill deeper than specified in the criteria for bidding (id. at 3). In addition, the severely fractured bedrock and massive voids were unforeseen site conditions that caused Odyssey to incur additional costs (id. at 3-4).

Odyssey's claim states that the criteria for bidding specified 60 micropiles of 20 feet each, for a total of 1,200 linear feet, but that it was required to drill 80 probe holes with a total depth of 2,215 feet, or 1,015 additional linear feet[2] (id. at 4). This added depth required the use of an additional 1,015 linear feet of micropile casing and reinforcing bar (id.). Odyssey attempted to raise these issues at the preconstruction meeting, but was told by the government to submit an RFI (id.). Odyssey submitted

---

[2] Odyssey inconsistently states elsewhere in its claim that the criteria for bidding required 60 micropiles of 25 feet for a total of 1,500 linear feet and that it actually drilled 2,520 linear feet, or an additional 1,020 linear feet (R4, tab 3a at 3).

3

the RFI on November 23 and, in response, the government told Odyssey to submit its micropile design independent of the bidding assumptions (*id.* at 5). The government directed Odyssey to use additional micropiles in some areas and indicated that additional micropiles would be needed in other areas to meet loading requirements, and this increased the number of micropiles from 60 to 80 (*id.*). Odyssey proposed an alternative method for soil stabilization but this was rejected by the government (*id.*). The government approved Odyssey's micropile design on May 13, 2016 (*id.*).

Odyssey's subcontractor responsible for the micropiles, Hills-Carnes, bid its subcontract based on the assumption of 60 micropiles contained in the solicitation (*id.*). The government repeatedly told Odyssey that it would receive an RFP and modification to pay for the additional micropiles and that there would be a unit cost line for additional grout (*id.* at 5-6). After the government approved Odyssey's micropile design including 80 micropiles, Odyssey's subcontractor costs increased from $221,516.80 to $510,643.00 for the extra piles (*id.* at 6). The extra depth and grout overages increased the total subcontractor costs to $613,913.65 (*id.*).

On May 10, 2016, Odyssey received the government's RFP for the increased costs of the micropile system as compared to the bidding assumptions (*id.*). Odyssey submitted its proposal for $512,162.74 and 116 additional days to the government on May 11, 2016 (*id.*). In an email chain on May 11, 2016, government employee Mike Notto stated that "the Government is in agreement that there are additional costs associated with performing the work to meet this contract requirement, as indicated in the RFP letter" and requested that Odyssey provide back-up documentation for its estimate of additional grout (*id.*).

While the RFP was under consideration, the government indicated that Odyssey was delaying the project (*id.* at 6-7). However, Odyssey's claim asserts that the government's delay in approving the micropile design delayed Odyssey's performance (*id.*). Odyssey indicated that it could not proceed with the micropile work without direction from the government (*id.* at 7). Once the government approved the micropile design Odyssey began work due to pressure from the government and on the basis of the RFP (*id.*). However, on June 2, 2016, the government cancelled the RFP for the change to the micropile work (*id.* at 8). The government did compensate Odyssey in a modification for 8 of the 20 additional micropiles, but not the associated additional drill depth of those 8 micropiles (*id.*). In the claim, filed on January 8, 2019, Odyssey asserted entitlement to 357 additional compensable days and $651,099.13 (*id.* at 9-10). On April 8, 2019, the government's contracting officer issued a final decision denying Odyssey's claim (compl. ¶ 88). Odyssey timely appealed the final decision to the Board.

4

DECISION

The government moves to dismiss each count of Odyssey's complaint for failure to submit the claims to the contracting officer for decision. The government additionally moves to dismiss Odyssey's claim for consequential damages as too remote and vague to recover, for failure to state a sum certain, and because the claim was not presented to the contracting officer for a decision.

I.    Standard of Review for Motions to Dismiss

Odyssey bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. Pursuant to the Contract Disputes Act (CDA) 41 U.S.C. §§ 7101-09, a contractor may, "within 90 days from the date of receipt of a contracting officer's decision" under 41 U.S.C. § 7103 appeal the decision to an agency board. 41 U.S.C. § 7104(a). Our reviewing court, The Court of Appeals for the Federal Circuit, has held that CDA jurisdiction requires "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

II.    Consequential Damages

Odyssey's complaint includes a claim for consequential damages in an amount of "at least $15,033,862" (compl. ¶ 123). The government moves to dismiss this portion of the complaint as speculative, for failure to state a sum certain, and because the claim for consequential damages was not presented to the contracting officer.

The Board has long held that qualifications to a numerical amount, such as the use of the word "approximately," "no less than," or "well over" prevent its consideration as a sum certain. *See, e.g., M.J. Hughes Constr. Inc.*, ASBCA No. 61782, 19-1 BCA ¶ 37,235 at 181,235 (citing cases holding that expressing a minimum amount for a claim does not state a sum certain). In fact, Board precedent has specifically held that a claim amount prefaced by the specific phrase "at least" fails to state a sum certain. *Precision Standard, Inc.*, ASBCA No. 55865, 11-1 BCA ¶ 34,669 at 170,788.

Odyssey argues that the sum certain requirement is a triumph of form over substance and that all Board precedent "is suspect because those decisions give unwarranted deference to the regulations' definition of a 'claim,' and that definition runs afoul of clear Congressional intent, at least in this instance" (app. resp. at 12). We are bound by our precedent, including *Precision Standard* and therefore must

5

dismiss Odyssey's request for consequential damages. *Precision Standard*, 11-1 BCA ¶ 34,669 at 170,788; *see also SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,220 (explaining that a prior three judge decision by this Board is binding precedent for future panels). In any event, reliance upon the FAR's definition of a claim is well-settled law as expressed by our reviewing court, the United States Court of Appeals for the Federal Circuit. *See, e.g., Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc).

As we hold that Odyssey's demand for consequential damages must be dismissed for failure to state a sum certain, we need not reach the government's other arguments; though we would view these claims with some skepticism were they properly before us as they indeed appear speculative. *See John Shaw, LLC d/b/a Shaw Building Maintenance*, ASBCA Nos. 61379, 61585, 19-1 BCA ¶ 37,216 at 181,184 (citing *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1325 (Fed Cir. 2002). Moreover, we note that Odyssey's claim stated that it was for "additional time, subcontract costs and extended overhead" (R4, tab 3a at 2). Odyssey's demand for consequential damages relies upon facts regarding its expected profits from this contact, and how it would have used these anticipated profits to increase its bonding capacity to take on additional contracts (compl. ¶¶ 119-23). These facts were not alleged in Odyssey's claim and we find, as an alternative basis for our holding, that this constitutes a new claim. Thus, we grant the government's motion with regard to Odyssey's demand for consequential damages.

### III. Count I – Breach of Express Contract

Count I of Odyssey's complaint asserts a breach of contract. Odyssey asserts that the government breached a contractual duty to adjust for increased costs when it approves a shop drawing, such as the micropile system design, that contains variations in the requirements of the contract (compl. ¶¶ 125.a, 126). Odyssey additionally alleges breach of the duty to issue an equitable adjustment following the government's alleged change order forcing Odyssey to begin performance of the micropile system before issuing a modification based on the RFP (compl. ¶¶ 59-62, 125.b, 127). Odyssey next alleges a breach of the government's obligation to make payment within 14 days of receipt of an invoice approved by the contracting officer (compl. ¶ 125.c, 128). Odyssey also alleges breach of an express and enforceable contract created by the government's promise to issue an RFP regarding the micropile system (compl. ¶ 129) and a breach of contractual obligations by frustrating Odyssey's performance (compl. ¶ 130). The government moves to dismiss Count I of the complaint because Odyssey did not present these claims to the contracting officer for a final decision (gov't mot. at 12-14).

The Board has recognized that it possesses jurisdiction to entertain an appeal, when the theory of recovery is different than the theory presented in the claims, so

6

long as they both are based on substantially the same operative facts. *Macro-Z Technology*, ASBCA No. 60592, 19-1 BCA ¶ 37,358 at 181,659. Moreover, "[t]he test for what constitutes a 'new' claim is whether 'claims are based on a common or related set of operative facts.'" *Unconventional Concepts, Inc.*, ASBCA No. 56065 *et al.*, 10-1 BCA ¶ 34,340 at 169,591 (quoting *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990)). Adding facts or legal arguments does not create a different claim. *K-Con Building Systems, Inc. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015). "The introduction of additional facts which do not alter the nature of the original claim . . . or the assertion of a new legal theory of recovery, when based upon the same operative facts as included in the original claim, do not constitute new claims." *Trepte Constr. Co. Inc.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86. A claim is new when it "'present[s] a materially different factual or legal theory' of relief." *Lee's Ford Dock, Inc. v. Secretary of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017) (quoting *K-Con Bldg. Sys., Inc.*, 778 F.3d at 1006). "Materially different claims 'will necessitate a focus on a different or unrelated set of operative facts.'" *Id.* (quoting *Placeway Constr.*, 920 F.2d at 907).

Odyssey's Count I contains at least five breach of contract theories. The main theory, that the government had a duty to adjust for increased costs when it approved a shop drawing, relies upon the fact that the solicitation had assumptions for bidding purposes and that Odyssey was required to seek government approval for a micropile design that differed from the bidding assumptions. These facts were included in Odyssey's claim (R4, tab 3a at 3-8), although Odyssey's claim asserted constructive change, a different legal theory. Here, we find Odyssey's breach of contract by failing to adjust for the increased micropile costs is the same claim for CDA jurisdictional purposes.

Odyssey's second breach theory in Count I is that the government failed to issue a modification after a change order. This theory relies on the asserted facts that the government promised a contract modification and forced Odyssey to begin work before the change order was issued. Once again, we find that Odyssey asserted these facts in its claim (R4, tab 3a at 6-8) and that it is the same claim despite being a new legal theory.[3]

Odyssey's third asserted breach of contract in Count I alleges that the government failed to make prompt payment of invoices approved by the contracting officer. This breach depends on facts regarding the government's alleged arbitrary

---

[3] We note that the government's motion seeks dismissal only on the basis that the claim was not submitted to the contacting officer. Odyssey's claim may be subject to dismissal for failure to allege the necessary elements of a contract, such as authority of the government official entering into the purported agreement.

withholding of contract funds. These facts were not included in Odyssey's claim and we find that this is a new claim that we lack jurisdiction to entertain.

Odyssey's fourth asserted breach in Count I is the breach of an express and enforceable contract created by the government's promise to issue an RFP. This breach basically depends on the same facts as Odyssey's alleged breach due to the government's failure to issue a change order discussed above. Once again, this is a new legal theory based on the same facts.

We interpret Odyssey's fifth asserted breach in Claim I, that the government frustrated its contract performance, as a claim for delay costs that would depend on facts related to delays in the government's review of the micropile design and find that these facts were asserted in Odyssey's claim (R4, tab 3a at 3-8). Thus, we grant the government's motion to dismiss with regard to Odyssey's claim regarding contract withholding (compl. ¶¶ 125.c, 128), but deny the government's motion with regard to the remainder of Count I.

IV.    Count II – Breach of Implied-In-Fact Contract

Count II of Odyssey's complaint asserts breach of an implied-in-fact contract. The complaint is vague as to the terms of the implied-in-fact contract, but we read it to assert an implied-in-fact contract to compensate Odyssey for the additional micropiles, to pay Odyssey's invoices after approval by the contracting officer's representative, and to respond to RFIs within 14 days. To the extent Odyssey asserts an implied-in-fact contract for additional compensation for the micropiles (compl. ¶ 133), and for the same reasons stated with regard to Count I, we find that this is a new legal theory based upon facts asserted in its claim[4] (R4, tab 3a at 3-8). To the extent Odyssey's complaint asserts an implied-in-fact contract regarding the government's payment of invoices (compl. ¶ 134), these facts were not alleged in Odyssey's claim and we find that this portion of Count II is a new claim. Additionally, to the extent Odyssey's complaint asserts an implied-in-fact contract to respond to RFI's within 14 days (compl. ¶ 135), this also relies upon facts not alleged in Odyssey's claim and thus, represents a new claim. We deny the government's motion to dismiss Count II of Odyssey's complaint to the extent Odyssey asserts an implied-in-fact contract for compensation regarding the additional micropiles. We grant the government's motion to dismiss Count II of

---

[4] Once again, we note again that the government's motion was based upon failure to submit the claim to the contracting officer, and that the count may suffer from additional jurisdictional problems. In addition to problems identified in footnote 3, *supra*, we note that an implied-in-fact contract cannot exist where a written contract addresses the same issue. *See, e.g., Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997).

Odyssey's complaint to the extent Odyssey asserts an implied-in-fact contract for payment of invoices or to respond to RFI's within 14 days.

## V.    Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count III of its complaint, Odyssey asserts a breach of the duty of good faith and fair dealing (compl. ¶¶ 140-44). Every contract "imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 (1981)). This duty of good faith and fair dealing "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Id.* at 991 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)). However, the implicit duty prevents a contracting party from "interfer[ing] with the other party's performance and not to act so as to destroy the *reasonable expectations* of the other party regarding the *fruits of the contract*." *Id.* (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (emphasis in original)). We recently explained that "the doctrine imposes duties that fall within the broad outlines set forth by the express terms of the contract, approximating the parties' intent, as divined by the express terms of the contract, for addressing circumstances not specifically set forth by the contract." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,085 at 180,539.

Odyssey's complaint alleges that the government breached the duty of good faith and fair dealing by failing to fairly compensate it for the costs of the micropile design and delays (compl. ¶¶ 142-43). Although Odyssey's complaint contains an extended discussion with new factual allegations regarding the government's purportedly improper actions, Odyssey does not rely upon these facts in Count III of its complaint. Instead, Count III of its complaint relies upon a duty for the government to compensate it for the costs of the micropile design. These facts were asserted in its claim (R4, tab 3a at 3-8), and therefore, we find that Odyssey is asserting a new legal theory based on the same facts as contained in its claim. Accordingly, we deny the government's motion to dismiss Count III.

## CONCLUSION

For the reasons stated above, we grant the government's motion to dismiss with regard to Odyssey's claim for consequential damages (compl. ¶ 123)[5], and Count I regarding contract withholding (compl. ¶¶ 125.c, 128), Count II regarding an

---

[5] We note that on December 4, 2019, the Board docketed as ASBCA No. 62279, Odyssey's appeal from a Contracting Officer's Final Decision denying Odyssey's claim for consequential damages.

9

implied-in-fact contract for payment of invoices or to respond to RFIs within 14 days (compl. ¶¶ 133-37). We deny the government's motion with regard to Odyssey's remaining claims.

Dated: January 28, 2019

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62062, Appeal of Odyssey International, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals