# United States Court of Appeals for the Federal Circuit

---

**K-CON BUILDING SYSTEMS, INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5062

---

Appeal from the United States Court of Federal Claims in No. 1:05-cv-01054-MMS, Judge Margaret M. Sweeney.

---

Decided: February 12, 2015

---

WILLIAM ATKINS SCOTT, Pederson & Scott, P.C., Charleston, SC, argued for plaintiff-appellant.

DANIEL B. VOLK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., BRYANT G. SNEE.

---

Before PROST, *Chief Judge,* NEWMAN and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge*.

K-Con Building Systems, Inc., entered into a contract with the federal government to construct a building for the Coast Guard. Once K-Con finished, the government imposed liquidated damages for delay in completion. K-Con sued in the Court of Federal Claims, seeking two forms of relief. First, it requested remission of the liquidated damages on two grounds—that the contract's liquidated-damages clause was unenforceable and that K-Con was entitled to an extension of the completion date. Second, it requested additional compensation based on work performed in response to government requests that K-Con alleges amounted to contract changes. The Court of Federal Claims held that the contract's liquidated-damages clause is enforceable and that K-Con did not comply with the written-notice precondition for invoking the contract clause governing changes. It also held that K-Con's claim for an extension on the completion date must be dismissed for lack of jurisdiction. We affirm.

## BACKGROUND

On January 20, 2004, K-Con entered into a contract with the Coast Guard, under which K-Con would construct a "cutter support team building" in Port Huron, Michigan, for $582,641. The project was to be completed by November 20, 2004, with K-Con agreeing to pay $589 in liquidated damages for each day of delay. On May 23, 2005, the Coast Guard accepted the building as substantially complete. It withheld payment of $109,554 as liquidated damages for what it calculated to be tardiness of 186 days. No party challenges the calculation.

On July 28, 2005, K-Con sent a letter to the government contracting officer requesting remission of the liquidated damages "wrongfully withheld from the contract." J.A. 259, Letter from K-Con to Contracting Officer (July 8, 2005) (first letter). As grounds for remission, K-Con asserted that the "liquidated damages [constituted]

an impermissible penalty" and that the Coast Guard "failed to issue extensions to the completion date as a result of changes to the contract." *Id.* It provided no details regarding its request for a time extension based on contract changes. After the contracting officer denied K-Con's request for remission, K-Con sued in the Court of Federal Claims under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-613 (2006).[1] K-Con sought remission of $109,554 plus interest in liquidated damages on the two grounds asserted in its July 28, 2005 letter. Original Complaint, *K-Con Bldg. Sys., Inc. v. United States*, No. 05-01054C (Fed. Cl. Sept. 30, 2005).

On December 15, 2006, while litigation in the Court of Federal Claims was underway, K-Con submitted a second letter to the contracting officer. J.A. 263–64, Letter from K-Con to Contracting Officer (Dec. 15, 2006) (second letter). The second letter extensively details the contract changes allegedly made by the Coast Guard during the contract term and asks for a new remedy—$196,126.38 for additional work necessitated by the changes—as well as an extension of the completion date of the contract. The contracting officer denied K-Con's requests. K-Con then amended its complaint in the Court of Federal Claims to add allegations about the matter covered in its second letter and to seek, beyond the liquidated-damages relief, a judgment of $196,126.38 and a 186-day extension. Amended Complaint, *K-Con Bldg. Sys.*, No. 05-01054C (Fed. Cl. Mar. 18, 2007).

The Court of Federal Claims first ruled, in deciding an initial government motion for summary judgment, that the contract's liquidated-damages clause is enforceable.

---

[1] The cited provisions apply to this case. Since 2011, the Contract Disputes Act has been codified at 41 U.S.C. §§ 7101-7109. *See* Pub. L. No. 111-350, 124 Stat. 3677 (2011).

The court later issued two rulings in deciding a second government motion for summary judgment. It held that K-Con did not provide valid written notice regarding contract changes and therefore had not satisfied a precondition to claiming additional compensation under the contract's changes clause. And it dismissed, for lack of jurisdiction, K-Con's time-extension claim for remission of liquidated damages.

K-Con appeals all three rulings. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Whether the Court of Federal Claims had jurisdiction under the CDA is a question of law we decide de novo. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). A plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "[W]e review a grant of summary judgment by the Court of Federal Claims de novo, drawing justifiable factual inferences in favor of the party opposing the judgment." *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1244 (Fed. Cir. 2007). "Once the moving party has satisfied its initial burden, the opposing party must establish a genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence." *Id.*

### A

Before turning to the merits, we must determine which issues the Court of Federal Claims had jurisdiction to decide under the CDA. "The CDA grants [the Court of Federal Claims] jurisdiction over actions brought on claims within twelve months of a contracting officer's final decision." *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541 (Fed. Cir. 1996) (citing 41 U.S.C. § 609(a)). Jurisdiction requires both that a claim meeting

certain requirements have been submitted to the relevant contracting officer and that the contracting officer have issued a final decision on that claim. *Id.* at 1541–42.

A claim is "'a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.'" *Reflectone*, 60 F.3d at 1575 (quoting regulation then codified at 48 C.F.R. § 33.201; current version at 48 C.F.R. § 52.233-1). A claim need not "be submitted in any particular form or use any particular wording . . . [, but it must provide] a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). A contracting officer's final decision on a claim may either be written, 41 U.S.C. § 605(a), or implied from "[a]ny failure by the contracting officer to issue a decision on a contract claim within the period required," *id.* § 605(c)(5).

Identifying what constitutes a separate claim is important. We have long held that the jurisdictional standard must be applied to each claim, not an entire case; jurisdiction exists over those claims which satisfy the requirements of an adequate statement of the amount sought and an adequate statement of the basis for the request. *See Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985) ("Congress did not intend the word 'claim' to mean the whole case between the contractor and the Government; but, rather, that 'claim' mean each claim under the CDA for money that is one part of a divisible case."); *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327–32 (Fed. Cir. 2010) (reaching different results for different claims in determining Court of Federal Claims jurisdiction). Claim identification is important also for application of the rule that, once a claim is in litigation, the contracting officer

may not rule on it—even if the claim is not properly in litigation because it was not properly submitted to and denied by the contracting officer before it was placed in litigation. *Sharman Co. v. United States*, 2 F.3d 1564, 1571–72 (Fed. Cir. 1993) ("Once a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation . . . [,] divest[ing] the contracting officer of his authority to issue a final decision on the claim.") (citing 28 U.S.C. §§ 516–520), *overruled on other grounds, Reflectone,* 60 F.3d 1572; *see also* John Cibinic, Jr., et al., *Administration of Government Contracts* 1292–93 (4th ed. 2006) ("The contracting officer's authority to settle claims does not extend to cases in which litigation has commenced in a court. . . . [N]o final decision may be issued on a matter that is already in litigation.").

Our longstanding demand that a claim adequately specify both the amount sought and the basis for the request implies that, at least for present purposes, we should treat requests as involving separate claims if they *either* request different remedies (whether monetary or non-monetary) *or* assert grounds that are materially different from each other factually or legally. *See Contract Cleaning*, 811 F.2d at 592 (evaluating the adequacy of a claim on the notice it gives of the remedy requested and the basis for that remedy); 48 C.F.R. § 52.233-1(c) (defining a claim as a written demand for a remedy "as a matter of right"). This approach, which has been applied in a practical way, serves the objective of giving the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request.

We have not treated the different-remedies component as imposing so rigid a standard as to preclude all litigation adjustments in amounts "based upon matters developed in litigation." *Tecom, Inc. v. United States*, 732 F.2d 935, 937–38 (Fed. Cir. 1984) ("'It would be most disruptive of normal litigation procedure if any increase

in the amount of a claim based upon matters developed in litigation before the court [or board] had to be submitted to the contracting officer before the court [or board] could continue to a final resolution on the claim.'") (alterations in original; quoting *J.F. Shea Co. v. United States*, 4 Cl. Ct. 46, 54 (1983)). But we have differentiated claims seeking different types of remedy, such as expectation damages versus consequential damages. *Case, Inc. v. United States*, 88 F.3d 1004, 1010 (Fed. Cir. 1996) (holding that two cases "involved different claims" even though both "arose out of the same underlying set of facts and involved [similar, if not the same] allegations of defective specifications," because the later-filed case requested "additional compensation" beyond the progress payments requested in the other case, including lost profits). In a similar vein, merely adding factual details or legal argumentation does not create a different claim, but presenting a materially different factual or legal theory (*e.g.*, breach of contract for not constructing a building on time versus breach of contract for constructing with the wrong materials) does create a different claim. *See Santa Fe Eng'rs, Inc. v. United States*, 818 F.2d 856, 858–60 (Fed. Cir. 1987) (holding that a claim for damages related to three change orders was different from a claim for damages related to "'the collective nature of *all* the problems, changes and directives issued on the project'") (emphasis in original). We have gone beyond the face of claims to make these distinctions. *See, e.g.*, *Sharman*, 2 F.3d at 1571 (equating claims that "allege[d] entitlement to the same money based on the same partial performance, only under a different legal label"); *Scott Timber Co. v. United States*, 333 F.3d 1358, 1366 (Fed. Cir. 2003) ("Scott may have posed slightly different legal theories for the breach, but Scott's claim is essentially the same as presented to the CO.").

In its amended complaint in this case, K-Con presented three discrete claims—*i.e.*, three distinct combinations

of a request for a remedy and a basis for that request. First, it claimed that the liquidated-damages clause is unenforceable and on that basis sought remission of $109,554 plus interest in liquidated damages withheld by the Coast Guard. Second, as an additional basis for seeking the same remedy of remission, it claimed that it was entitled to time extensions that the Coast Guard never provided. Third, it claimed that, because of contract changes made by the Coast Guard, it had to do additional work that entitled it to $196,126.38 over and above remission of liquidated damages. We agree with the Court of Federal Claims that it had jurisdiction to decide the first and third claims, which relate to enforceability of the liquidated-damages clause and to alleged contract changes, but not the second claim, which challenges the Coast Guard's failure to grant time extensions.

Jurisdiction over the unenforceability claim is undisputed, and properly so. There was adequate pre-suit notice to the contracting officer in K-Con's first letter, in which K-Con clearly requested a sum certain ($118,950.68 plus interest, in remission of liquidated damages) on the ground that the liquidated damages imposed in this case amounted to an "impermissible penalty." J.A. 259. There was also, in the contracting officer's first denial, a valid pre-suit final decision rejecting K-Con's contentions.

Jurisdiction over the contract-changes claim is disputed. Like the Court of Federal Claims, we conclude that there was CDA jurisdiction over that claim, based on K-Con's second letter to the contracting officer. That letter provides ample detail regarding the basis for the claim, including what specific actions by the Coast Guard allegedly made constructive changes to contract requirements; and the letter clearly requests award of a sum certain as a remedy ($196,126.38 in compensation for extra work performed).

The government urges that there was no authorized final decision on that claim before litigation on it commenced, because K-Con sent its second letter after filing its original complaint, which the government says already contained the contract-changes claim. *See Sharman*, 2 F.3d at 1571–72. We disagree with the premise that the second letter's contract-changes claim was already in litigation when K-Con sent that letter. The original complaint does complain about contract changes and include some factual assertions shared by the contract-changes claim presented in the second letter. *Compare* J.A. 68 (original complaint) ("[T]he Coast Guard changed and modified the Contract in among other ways, by failing to properly review and approve drawings submitted by K-Con, and directing K-Con to perform additional work that was not required by the Contract.") *with* J.A. 264–66 (second letter) (complaining of contract-changes from the Coast Guard's review of design submittals). But the remedy requested in the two documents is categorically different: the original complaint asks for remission of liquidated damages, whereas the second letter asks for compensation for extra work performed. That is enough to make the requests different claims. Consequently, the contracting officer's rejection of the second letter's contract-changes claim, a rejection issued upon full consideration of its merits, was an authorized final decision sufficient to establish jurisdiction in the Court of Federal Claims.

The Court of Federal Claims did not have jurisdiction over K-Con's time-extension claim. At bottom, the time-extension claim is a request for remission of liquidated damages on the ground that the Coast Guard failed to issue time extensions for additional work added to the

contract.[2]  K-Con squarely placed that claim in litigation through its original complaint, which means that K-Con had to present that claim adequately in its first letter, not in the post-suit second letter.  But the first letter plainly fails to allege enough detail to provide adequate notice of the basis for any time extension.  Indeed, K-Con admitted to the Court of Federal Claims that its first letter "could not be a valid [time-extension] claim."  J.A. 44.

---

[2]    It might be argued that there are in fact two time-extension claims at issue: (1) a time-extension claim from the first letter and original complaint requesting remission of liquidated damages; and (2) a time-extension claim from the second letter and amended complaint requesting a declaratory judgment of a 186-day extension.  *Compare* J.A. 259 (first letter) (requesting remission in part because "the government failed to issue extensions"), and J.A. 68 at ¶ 6, 11 (original complaint) (same), *with* J.A. 266 (second letter) (requesting "an extension in the contract performance period resulting from [certain contract] changes"), and J.A. 85 (amended complaint) (same).  But K-Con has identified only one concrete benefit it would receive from its requested declaratory judgment of entitlement to a 186-day extension: remission of the liquidated damages withheld for tardiness under the contract.  *See Sharman*, 2 F.3d at 1571.  In other circumstances, a declaratory judgment of a time extension might be a free-standing and independently meaningful remedy.

## B

### 1

On the merits, we first address K-Con's claim that the liquidated-damages clause is unenforceable as imposing an impermissible penalty. K-Con faces a steep climb in trying to establish unenforceability. "When damages are uncertain or difficult to measure, a liquidated damages clause will be enforced as long as 'the amount stipulated for is not so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression.'" *DJ Mfg. Corp. v. United States*, 86 F.3d 1130, 1133 (Fed. Cir. 1996) (quoting *Wise v. United States*, 249 U.S. 361, 365 (1919)). "With that narrow exception, '[t]here is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced.'" *Id.* (alteration in original) (quoting *Wise*, 249 U.S. at 365); *see also* 48 C.F.R. § 11.501(b). "[T]he test is objective," and "regardless of how the liquidated damage figure was arrived at, the liquidated damages clause will be enforced if the amount stipulated is reasonable for the particular agreement at the time it is made." *DJ Mfg. Corp.*, 86 F.3d at 1137 (citations and internal quotation marks omitted).

We agree with the Court of Federal Claims that the liquidated-damages clause here is enforceable. The clause sets a rate of $589 per day of delay for a $582,641 contract. K-Con has alleged that the Coast Guard made certain errors in arriving at the $589 figure for inclusion in the contract, such as a "mathematical error [amounting to an additional] $26.30/day." Appellant's Br. at 18. K-Con's allegations, however, are immaterial. Even if the alleged errors were made, the ultimate rate of $589 per

day is reasonable. *DJ Mfg. Corp.*, 86 F.3d at 1137. At the time of contracting, it was foreseeable that delay would create a number of costs for the Coast Guard, including costs for travel, inspection, and other work by government personnel—all continuing beyond the date by which such activities for this contract should have ended. J.A. 203–04 (contracting officer tabulating various costs); *see also* 48 C.F.R. § 11.502(b) (requiring that rates in "[c]onstruction contracts with liquidated damages provisions . . . include the estimated daily cost of Government inspection and superintendence" as well as "other expected expenses"). The exact dollar figure of those costs was "uncertain or difficult to measure," but given the general existence of such costs, it cannot be said that the $589-per-day rate agreed upon by the parties at the time of contracting was "so extravagant[] or disproportionate to the amount of property loss" as to constitute an impermissible penalty on K-Con, rather than a reasonable estimate of the costs that delay in job completion would likely impose. *See DJ Mfg. Corp.*, 86 F.3d at 1133–34.

K-Con counters that the rate cannot reflect a reasonable estimate of costs because it includes personnel costs that "would have been incurred no matter what." Appellant's Br. at 19. Specifically, K-Con argues that Coast Guard "personnel did not work any more hours, work any differently, or get paid any more or any less" due to delay under the contract. *Id.* This argument is meritless. It is reasonable to expect that delay, if it occurs, will require personnel to devote more time and resources to the project than they would have if the project had been completed on time. Moreover, even if the same personnel might work the same number of hours regardless of delay, it is reasonable to expect that delay would force them to reallocate their hours and impair their ability to give planned attention to other projects, to the detriment of those other projects. In short, inefficiency plausibly breeds administrative costs, which the agreed-upon rate

here properly estimated. *See Jennie-O Foods, Inc. v. United States*, 580 F.2d 400, 413 (Ct. Cl. 1978). K-Con has not raised a genuine issue of material fact regarding the rate's reasonableness.

2

The second merits issue involves K-Con's claim that it is entitled to compensation for additional work it performed because of what it says were constructive changes made to the contract by the Coast Guard. The relevant portion of the contract's changes clause reads as follows:

> (b) Any other written or oral order . . . from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating
>
> (1) the date, circumstances, and source of the order and
>
> (2) that the Contractor regards the order as a change order.
>
> . . . .
>
> (d) . . . [E]xcept for an adjustment based on defective specifications, no adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required.

48 C.F.R. § 52.243-4 (Aug. 1987); *see* J.A. 145 (contract incorporating the changes clause).

K-Con alleges that the Coast Guard made two sets of changes to the contract. First, it alleges that, on January 28, 2004, the Coast Guard requested that the building's eave height be increased by four inches. Second, it alleges that, starting in April 2004 and continuing through July

2004, the Coast Guard requested various changes upon reviewing K-Con's design submissions. We agree with the Court of Federal Claims that, with regard to all of the alleged changes, K-Con did not comply with the written-notice requirement of the contract's changes clause.

Throughout the period that the Coast Guard was allegedly making changes, K-Con never objected to the Coast Guard's actions or suggested that it was entitled to an adjustment of contract terms. Rather, K-Con repeatedly expressed its intent to incorporate the Coast Guard's requests as though they were consistent with the terms of the contract. *E.g.*, J.A. 345–46 (K-Con responding to Coast Guard's review comments with brief, affirmative statements, such as "[w]ill comply," "[c]orrection will be made," and "[d]etail will be revised"). It was only once K-Con submitted its contract-changes claim in its second letter to the contracting officer—more than two years after any of the changes at issue were allegedly ordered—that K-Con seems to have provided written notice adequate under paragraph (b). Only then did K-Con identify the "date, circumstances, and source of the order[s]" it objected to and indicate that it "regard[ed] the order[s] as change order[s]." 48 C.F.R. § 52.243-4(b).

Two years is well beyond the 20-day time limit imposed by paragraph (d). And the notice provision serves an important purpose in a contract in which *some* government requests are plainly contemplated *under* the contract. Timely written notice differentiates requests the contractor views as outside the contract from those it deems contemplated by the contract. *See Singer Co. Librascope Div. v. United States*, 568 F.2d 695, 711 (Ct. Cl. 1977) ("[T]he work was done without notice to the contracting officer that Librascope considered the effort involved to be extra-contractual. . . . The contractor's failure to protest, while perhaps not an outright bar to the claim, is nevertheless an evidentiary consideration which, in these circumstances, takes on controlling signifi-

cance."). And it gives the government timely notice of what amounts it might be on the hook for, so that it will not be surprised by money claims later, as well as an opportunity to address demands for more money when it might yet avoid them.

Sometimes, extenuating circumstances have weighed against strict enforcement of the time limit. *See generally Powers Regulator Co.*, GSBCA No. 4668, 80-2 BCA ¶ 14,463 (Apr. 30, 1980) (reviewing how the time limit has been enforced by boards of contract appeals and enumerating exceptions to its strict enforcement); *see also Hoel-Steffen Const. Co. v. United States*, 456 F.2d 760, 767–68 (Ct. Cl. 1972) (noting that a "severe and narrow application of the notice requirements [of the suspension clause in the then-extant Federal Procurement Regulations] . . . would be out of tune with the language and purpose of the notice provisions, as well as with this court's wholesome concern that notice provisions in contract-adjustment clauses not be applied too technically and illiberally where the Government is quite aware of the operative facts"). But there are no such extenuating circumstances here. K-Con has proffered no evidence suggesting that the Coast Guard knew or should have known that K-Con considered the work requests to be contract changes until, at the earliest, K-Con submitted its first letter to the contracting officer. That letter, sent a year after the last of the alleged changes, lacks any detail with regard to what K-Con considered to be the changes made and offers the Coast Guard a simple choice between acceding to K-Con's demands or being sued. Such notice does not comply with the changes clause.

K-Con's sole counterargument is that it did not have to comply with the notice provision of the changes clause because compliance would have been futile. Even if a futility exception exists, however, K-Con's argument fails because it has not shown that compliance would have been futile. The Coast Guard never stated or implied in

advance that it would reject allegations of contract changes. *See* J.A. 252 ("Design Coordination Review Comments" form, which left a space for the contractor to respond with action code "dc," meaning "[d]o not concur with [the Coast Guard's] comment for reasons as indicated"). And although the contracting officer, in response to K-Con's second letter, did ultimately reject K-Con's contract-changes claim, deeming that fact sufficient to establish futility would threaten to erase the notice requirement. In any event, it is unknown what would have happened had K-Con broached the issue of changes around the time the Coast Guard made the work requests at issue. The submission of the second letter prompted the Coast Guard to make a choice between giving in to K-Con's demands or subjecting itself to further litigation; timely objections would have presented a very different choice between at least four options—refraining from making requests regarding K-Con's work, altering the nature of the requests, keeping the requests the same but making equitable adjustments to the contract, or rejecting the allegations of changes altogether and thereby risking litigation or a halt to the project. K-Con failed to comply with the changes clause, and its after-the-fact speculations about what would have happened had it complied do not create a genuine dispute of material fact regarding whether it should be excused for its failure.

CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.

**AFFIRMED**