ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Anthony and Gordon Construction Co. | )  ASBCA No. 61916 |
| | ) |
| Under Contract No. N69450-13-C-0754 | ) |

APPEARANCE FOR THE APPELLANT:      Herman M. Braude, Esq.
          Braude Law Group, P.C.
          Rockville, MD

APPEARANCES FOR THE GOVERNMENT:      Craig D. Jensen, Esq.
          Navy Chief Trial Attorney
          Matthew D. Bordelon, Esq.
          Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE HERZFELD ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Anthony and Gordon Construction Company (A&G) and the Naval Facilities Engineering Command Southeast in Jacksonville, Florida (Navy) contracted for A&G to provide repairs and renovation to an aircraft component maintenance facility at the Naval Air Station in Corpus Christi, Texas. A&G alleges that the Navy provided defective design specifications relating to two mechanical rooms at the facility, which required a change to the scope of work to correct the defects and resulted in A&G incurring additional costs of performance. The Navy has moved to dismiss this appeal for lack of jurisdiction, contending that A&G's allegation of damages in its complaint constitutes a claim not previously presented to the contracting officer. A&G opposes the motion, stating that the operative facts underlying A&G's claim and complaint are the same. We deny the Navy's motion.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On July 25, 2003, the Navy awarded A&G contract No. N69450-13-C-0754 (Contract) for a design-bid-build project for the repair and renovation of an aircraft component maintenance facility – Building 49 – at the Naval Air Station in Corpus Christi, Texas. (R4, tab 14 at 1783, 1786)[1] The Contract required A&G to submit various plans and schedules for government approval before A&G would be given access

---

[1] The Navy numbered pages in the Rule 4 file with a prefix of "GOV" with leading zeros. We have dropped the prefix and leading zeros and just cite the numeric page number.

to Building 49 (R4, tab 14 at 1828). The solicitation for the Contract had included specifications of the two mechanical rooms in Building 49 prepared by an architectural and engineering (A/E) firm, TransSystems Corporation (TransSystems), but the A/E firm was unable to access those portions of Building 49 due to traces of hexavalent chromium (a hazardous substance that required abatement prior to the start of any demolition work). (R4, tab 2 at 70) Indeed, neither A&G nor its mechanical and plumbing construction subcontractor, Blackstock Federal Constructors LLC (Blackstock), could gain access to Building 49 until after remediation of the hazardous substance was completed on February 28, 2014 (R4, tab 48 at 2189 (noting remediation period)).

After gaining access to the facility, Blackstock notified A&G that the Navy's drawings did not accurately reflect the size of the equipment in the two mechanical rooms (R4, tab 41 at 2093-98). In a June 6, 2014 request for information, A&G notified the Navy that one mechanical room – room 212 – "is not large enough for all of the equipment, the supportive piping systems[,] and the duct systems" and the room's structure "limits where floor openings can be located for ductwork" (R4, tab 41 at 2100, tab 48 at 2207).[2] On June 18-19, 2014, A&G, Blackstock, the Navy, and TransSystems met to discuss Blackstock and A&G's concerns (R4, tab 41 at 2107).[3] At that meeting, A&G and the Navy discussed concerns with room 212 and A&G and Blackstock also raised concerns regarding room 237, including proposing to re-locate the vacuum pumps from room 237 to another mechanical room (R4, tab 41 at 2107-08). A&G raised the concerns with room 237 again in writing in an October 17, 2014 request for information (R4, tab 48 at 2205).

On October 2, 2014, the Navy provided a revised layout for room 212 (R4, tab 41 at 2138, tab 48 at 2207-08). On November 7, 2014, the Navy and A&G appeared to initially resolve the arrangement of equipment in room 237 (R4, tab 41 at 2147, tab 48 at 2208). However, the parties continued to discuss concerns regarding room 237 through at least April 2015 (R4, tab 41 at 2148). And, A&G submitted a June 18, 2015 request for information to the Navy regarding insufficient space to install control panels in room 212, and an April 25, 2016 request for information proposing options for placement of a water treatment system either inside or outside of room 212 (R4, tab 41 at 2078, 2080-81).

On May 21, 2015, Blackstock sent a letter to A&G requesting compensation for delays that allegedly resulted from the defective drawings of the mechanical rooms

---

[2] Room 212 was a pre-existing room and room 237 was a new mechanical room to be added as part of the Contract's construction work (R4, tab 48 at 2167).

[3] TransSystems is also referred to as the "designer of record" (DOR) throughout A&G's claim (*see, e.g.,* R4, tab 41 at 2105, 2107).

provided by the Navy (R4, tab 25).[4]  On August 7, 2015, A&G submitted a request for equitable adjustment to the Navy, requesting $858,992, "plus Anthony & Gordon Construction Co. Inc. agreed upon mark ups" (R4, tab 30).  The evidence indicates A&G provided a copy of Blackstock's May 2015 submission as support for the request for equitable adjustment regarding delays resulting from the defective drawings of the mechanical rooms (R4, tabs 30-31, 41 at 2092).  On December 7, 2015, the contracting officer denied A&G's request for equitable adjustment stating:  "The Government believes that the additional costs claimed were a direct result of A&G and [Blackstock's] own actions.  A&G failed to comply with the contract specifications and progressed slowly with the required field measurements, layout coordination, and notification to the Government."  (R4, tab 34 at 1973)

Additionally, A&G encountered problems through at least August 2016 with testing and balancing work for some of the heating, ventilation, and air conditioning equipment in the mechanical rooms (R4, tab 41 at 2148-50).  A&G ascribed these problems to the Navy's defective drawings and the Navy's slow response in approving A&G's proposed solutions (id.).

On November 27, 2016, A&G submitted a certified claim to the Navy, which A&G revised by letter dated January 20, 2017 (R4, tabs 39, 41).  Along with disputing many of the assertions contained in the Navy's denial of its request for equitable adjustment, A&G's 83-page claim included a detailed chronology, intermingled with documentary evidence, describing the impact of the allegedly defective specifications. (R4, tab 41 at 2092-2150).  A&G stated, "Due to the Navy's design errors and subsequent delays in resolving the problems, A&G and Blackstock were forced to stay on the project much longer than planned and . . . to work out of sequence to their original plan for the work" (R4, tab 41 at 2151).  A&G further explained, "A&G/Blackstock's original plan was to complete all mechanical work within 270 calendar days.  Instead, the mechanical work began in March 2014 and scheduled for completion of the work in December 2016. This is an increase of 135%."  (R4, tab 41 at 2152)

A&G's claim sought "$3,990,263.00 in excess costs over its original bid" for the mechanical work (R4, tab 41 at 2152).  A&G derived this amount by subtracting its "original cost" for mechanical work (as expressed in Blackstock's subcontractor bid) from its total cost of completing the mechanical work:  $6,748,263 (total cost) - $2,758,000 (Blackstock's bid) = $3,990,263 (claim amount).  (R4, tab 41 at 2151-52)

---

[4] This document does not quantify the value of Blackstock's request for reimbursement. Although it indicates that "cost supporting documentation" was included at a "TAB 4" (see R4, tab 25 at 1864), we were unable to locate any such tab or other information purporting to assign a dollar value to the various increased costs within this document.

Upon receipt of A&G's certified claim, the Navy referred the claim to a Navy engineer for technical review and to the Defense Contract Audit Agency (DCAA) for an audit (R4, tab 40).

On April 4, 2018, the Navy engineer issued a "technical sufficiency claim analysis memorandum" that assessed A&G's claim (R4, tab 48). The Navy engineer concluded that A&G's claim had "merit [as] to A/E design error(s) and untimely resolution of the equipment layout for those spaces," but "the quantum costs of the delay have no merit" because A&G had failed to establish any delay solely caused by the Navy. (R4, tab 48 at 2166) The Navy engineer explained that A&G had failed to provide a time impact analysis of its delay damages and, based on the engineer's time impact analysis, A&G's construction schedule "was delayed by eight days, but that this delay was overlapped by a concurrent delay not part of this claim." (R4, tab 48 at 2166; *see also id*. at 2206) Notwithstanding the engineer's conclusion that the A/E's design error caused no damage to A&G, the Navy engineer concluded that the A/E – TransSystems – bore "ownership" for the problems and recommended that the contracting officer "initiate an A/E liability claim" against TransSystems to recoup payments made to the A/E to re-design the mechanical rooms. (R4, tab 48 at 2216)

On June 20, 2018, DCAA issued an audit report assessing A&G's claim (R4, tab 50). DCAA stated that A&G used the "total cost method" to calculate its claim, subtracting the original bid amount from the total costs incurred (R4, tab 50 at 2226). DCAA asserted that A&G's claim had failed to meet the four legal requirements necessary to prove delay damages using the total cost method calculation. (R4, tab 50 at 2226-27 (citing *WRB Corp. v. United States*, 183 Ct. Cl. 409 (1968) and *Servidone Constr. Corp. v. United States*, 931 F.2d 860 (Fed. Cir. 1991)).[5] In particular, DCAA concluded that A&G's claim did not meet two of those criteria, namely, that the incurred costs were reasonable and that the government was responsible for the difference between the bid amount and the incurred costs. (R4, tab 50 at 2227) For this reason, DCAA questioned the entire claim amount, citing the requirement in Federal Acquisition Regulation (FAR) 31.201-2(d) that contractors maintain adequate records to demonstrate that the claimed costs have been incurred, are allocable to the contract, and comply with the applicable cost principles.[6] (R4, tab 50 at 2226-29)

---

[5] In *Servidone*, the Federal Circuit explained that, under a total cost method, a "contractor must show: (1) the impracticability of proving actual losses directly; (2) the reasonableness of its bid; (3) the reasonableness of its actual costs; and (4) lack of responsibility for the added costs." *Servidone*, 931 F.2d at 861.

[6] The contract incorporated by reference Defense Federal Acquisition Regulation Supplement (DFARS) 252.243-7001, MODIFICATION PROPOSALS-PRICE BREAKDOWN (DEC 1991), which requires application of the cost principles of FAR Part 31 and DFARS Part 231 whenever costs are a factor in any price adjustment under the contract (R4, tab 14 at 1817). DCAA also found other

On October 19, 2018, the contracting officer issued his final decision (R4, tab 53). Stating that the "standard for determining if a delay is compensable using the critical path method is to determine if the overall completion date was affected," the contracting officer denied A&G's claim because "A&G was unable to prove that the overall project delay was solely caused by the [Navy]" (R4, tab 53 at 2243). The contracting officer also noted that DCAA's audit questioned the entirety of A&G's claim amount based upon DCAA's conclusion that A&G used the total cost method to calculate its damages, and cited A&G's "failure to maintain adequate records for the labor and material costs it used to reach the claim amount" as the most important factor in the DCAA's findings. (*Id.*)

While A&G pursued its request for equitable adjustment and then its certified claim, A&G faced several lawsuits relating to its subcontractor – Blackstock – each alleging amounts owed to Blackstock under the Contract. A&G's surety, Great American Insurance Company (Great American), sued A&G to obtain repayment and indemnification for claims filed against performance and payment bonds Great American issued to A&G on this Contract (and six other Federal government contracts), including alleging Blackstock asserted claims of $193,603 for this Contract (and $3.2 million for work on several contracts). (Gov't mot., attach. 2; compl. ¶¶ 7-8, 19-21, 24-54, *Great Am. Ins. Co. v. Anthony & Gordon Constr. Co.*, No. 16-490 (E.D. Tenn. Aug. 5, 2016) (*Great Am.* compl.)) Also, Blackstock sued A&G and Great American under the Miller Act, 40 U.S.C. §§ 3131-3134, for their failure to make payment for the added costs of contract performance, including owing Blackstock $190,626 under the Contract. (Gov't mot., attach. 3; complaint ¶¶ 9-17, *United States ex rel. Blackstock Fed. Constructors, LLC v. Anthony & Gordon Gen. Constr. Co.*, No. 16-515 (S.D. Tex. Dec. 6, 2016) ¶ 4 (*Blackstock* compl.)) In September 2018, A&G and Great American agreed to pay Blackstock $550,000 to settle its claims relating to this Contract (and several other claims brought in two other lawsuits).[7] (Gov't mot., attach. 1; Mutual Release & Settlement Agreement ¶ 1)

On December 19, 2018, A&G submitted its appeal of the contracting officer's October 19, 2018 final decision to the Board. On September 4, 2019, A&G filed its complaint alleging that the Navy: (1) breached the implied warranty of specifications, resulting in a constructive change and (2) breached the contract by failing to issue an equitable adjustment reimbursing A&G for its increased costs. (Compl. ¶¶ 52, 54, 60)

---

non-compliances with the cost principles, none of which are relevant for the purposes of our opinion today (*see* R4, tab 50 at 2230-35).

[7] Blackstock also sued A&G and Great American to seek payment under two additional Federal government contracts (also under the Miller Act). *See United States ex rel. Blackstock Fed. Constructors, LLC v. Anthony & Gordon Gen. Constr. Co.*, No. 16-184 (E.D. Tex.); *United States ex rel. Blackstock Fed. Constructors, LLC v. Anthony & Gordon Gen. Constr. Co.*, No. 16-510 (S.D. Tex.).

5

The complaint alleges that the Navy's (and the A/E's) defective specifications for mechanical rooms 212 and 237 delayed A&G's performance through late 2016. (Compl. ¶¶ 11-12, 26, 28-33) The complaint also alleges that A&G encountered further problems "testing and balancing the mechanical equipment due to the Navy's design errors in sizing equipment and ventilation ducts," resulting in delays from Fall 2016 through August 2018. (*Id.* ¶¶ 34-35)

In all, A&G alleges that the government-caused delay ran from "April 16, 2015 through August 2018, a delay of approximately 3.5 years" (compl. ¶ 36). In the complaint, A&G calculated its damages by multiplying its "general conditions rate" of $1,200 per day to each day of the 3.5 years of delay, resulting in $1,533,000 in delay costs (compl. ¶¶ 36-38). To that amount, A&G added its subcontractor costs: (1) $500,000 paid to Blackstock in the settlement (which was lower than the $1.5 million A&G alleges Blackstock sought under this Contract); and (2) $801,205.65 in costs A&G paid to another subcontractor – Chameleon. (Compl. ¶¶ 39-40) Thus, A&G's complaint sought $2,834,205.65 (lower than the amount in A&G's certified claim).

<u>DECISION</u>

A&G, as the proponent of the Board's jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816 (citing *Hanley Indus., Inc.*, ASBCA No. 58198, 14-1 BCA ¶ 35,500 at 174,015); *see also K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015). "The facts supporting jurisdiction are subject to our fact-finding upon a review of the record." *CCIE & Co.*, 14-1 BCA ¶ 35,700 at 174,816.

Pursuant to the CDA, "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1); *Lee's Ford Dock, Inc. v. Sec'y of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017). Because "'[t]he scope of [an] appeal is determined by the claim originally submitted to the contracting officer for a final decision' . . . . we do not possess jurisdiction over new claims that were not previously presented to the contracting officer." *Parwan Group Co.*, ASBCA No. 60657, 18-1 BCA ¶ 37,082 at 180,495 (quoting *MACH II*, ASBCA No. 56630, 10-1 BCA ¶ 34,357 at 169,673).

Determining whether a claim is new turns upon whether it "derives from the same set of common or related operative facts as the claim presented to the contracting officer, and whether it seeks the same or similar relief." *Parwan*, 18-1 BCA ¶ 37,082 at 180,495 (citing *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). Stated differently, "'[i]f the [Board] will have to review the same or related evidence to make its decision, then only one claim exists.'" *Nova Grp., Inc.*, ASBCA No. 55408, 10-2 BCA ¶ 34,533 at 170,323 (quoting *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907

6

(Fed. Cir. 1990)). No new claim arises by introduction of a new legal theory of recovery, additional facts that do not alter the nature of the original claim, or a dollar increase in the amount claimed, so long as the theory, facts, or dollar increase rely on the same operative facts included in the original claim. *See Trepte Constr. Co.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86; *see also Scott Timber*, 333 F.3d at 1365. Conversely, a new claim divests this Board of jurisdiction when an appeal presents a "'materially different factual or legal theory' of relief" requiring that we "'focus on a different or unrelated set of operative facts.'" *Lee's Ford Dock*, 865 F.3d at 1369 (quoting *K-Con Bldg.*, 778 F.3d at 1006, and *Placeway Constr. Corp.*, 920 F.2d at 907).

The Navy argues that A&G's complaint is "essentially different in nature" from its January 2017 claim. The Navy asserts that A&G's certified claim calculated damages based on a total cost method (subtracting actual costs from estimated costs), but the complaint calculates the damages based on "distinct periods of delay" caused by the government. (Gov't mot. at 5) The Navy argues that A&G's appeal should be dismissed because of this different method of calculating damages. We disagree.

A&G's certified claim and complaint both rely on the same operative facts that compensable delay resulted from the Navy's defective design drawings of the mechanical rooms (*compare* R4, tab 41 and compl. ¶¶ 11-12, 26, 28-33). As noted above, the certified claim is organized chronologically, showing throughout (via dated documents and other dated references) A&G's requests for information and notice to the Navy regarding the defective design drawings that resulted in delay and problems re-balancing the equipment in the mechanical rooms (R4, tab 41). The Navy engineer agreed that the Navy (and its A/E) caused delay to A&G in completing the project, but asserted that A&G's chosen damages calculation failed to establish compensable delay because it failed to include a time impact analysis proving that the government was solely responsible for the delay (R4, tab 48 at 2166, 2206). The DCAA agreed that A&G had failed to meet the legal standard of proof because A&G had chosen to use the total cost method for calculating its damages (R4, tab 50 at 2227).

In its complaint in this appeal, A&G asserts its damages still emanate from the Navy's defective design drawings of the mechanical rooms (compl. ¶¶ 11-12, 26, 28-33). A&G simply used a different method to calculate those damages. A&G calculated its damages by multiplying its "general conditions rate" of $1,200 per day to each day of the 3.5 years of delay, resulting in $1,533,000 in delay costs, and then added its subcontractor costs to that total. (Compl. ¶¶ 36-37) The complaint asserted that the project "was delayed through late 2016 due to the Mechanical Room Redesign issues" and "from the fall of 2016 through August 2018 due to completion of testing and balancing the mechanical systems[.]" (Compl. ¶¶ 28, 34)

The complaint calculates damages differently from the certified claim, but that does not present a "new claim." *Envt'l Chem. Corp.*, ASBCA No. 58871, 15-1 BCA

7

¶ 36,110 at 176,287-88 (concluding that contractor's assertion of Eichleay damages in an amended complaint was not a "new claim" where appellant sought delay damages in certified claim); *Advanced Commc'n Sys.*, ASBCA No. 52592, 06-2 BCA ¶ 33,429 at 165,736 ("As an alternative measure of damages for the same breach, the 8 March 2006 revised quantum claim for lost profit damages was not a new claim for purposes of our jurisdiction."); *Dawkins Gen. Contractors & Supply, Inc.*, ASBCA No. 48535, 03-2 BCA ¶ 32,305 at 159,844 ("The assertion of a new legal theory of recovery, when based upon the same operative facts as the original claim, does not constitute a new claim."). A&G's use of the daily rate (in the complaint) rather than the total cost method (in the original claim) does not constitute a change in the theory of liability (entitlement), just a change in the method of calculating damages (quantum).  *See Servidone*, 931 F.2d at 861-62 (noting that a court or board can use the total cost method "as 'only a starting point' with such adjustments thereafter made in such computations" to assure the damages "fairly represented the increased costs the contractor directly suffered" (quoting *Boyagian v. United States*, 423 F.2d 1231, 1240 (Ct. Cl. 1970)); *see also Advanced Commc'n Sys.*, 06-2 BCA ¶ 33,429 at 165,736 (concluding no new claim arose from  "alternative measure of damages" before the Board as opposed to appeals that raised "new operative entitlement facts"); *RGI, Inc.*, ASBCA No. 38772, 92-2 BCA ¶ 24,839 at 123,932 ("Nor does it present major revisions to the underlying factual entitlement elements presented in the claim submitted to the contracting officer as would render it a new claim."). A&G's claim gave "the contracting officer an ample pre-suit opportunity to rule on the request, knowing at least the relief sought" – equitable adjustment for money damages – "and what substantive issues are raised by the request" – delay based on defective specifications.  *K-Con Bldg. Sys.*, 778 F.3d at 1006. The operative facts have not changed and, thus, the claim is the same for purposes of our jurisdiction.

The Navy also asserts that A&G's complaint introduces "significant factual developments" subsequent to A&G's certified claim, including A&G's 2016-2017 lawsuits with Great American and Blackstock, which resulted in A&G reducing its claim after settling those claims for $500,000 (where Blackstock sought $1.5 million in additional costs) (gov't mot. at 6-7).  The Navy argues that the absence of that information from the claim deprived the contracting officer of the opportunity to analyze the basis for the settlement, including whether A&G's alleged liability was attributable to the government and to this particular Contract (*id.* at 6).

First, an appellant's decision to reduce the amount of damages sought from its claim does not present a "new claim."  *Raytheon Co.*, ASBCA No. 57743 *et al.*, 17-1 BCA ¶ 36,724 at 178,847 ("An increase (or reduction) on appeal in the amount claimed does not constitute a new claim under the CDA as long as the nature of the claim and basic operative facts are essentially the same."), *aff'd*, 940 F.3d 1310 (Fed. Cir. 2019); *Lockheed Martin Librascope Corp.*, ASBCA No. 50508, 00-1 BCA ¶ 30,635 at

8

151,249-50 ("Its reassertion in the Amended Complaint, which substantially reduces the amount claimed, does not constitute a change in the essential nature or the operative facts of the claim."); *Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States*, 87 Fed. Cl. 113,122 (2009) (finding no new claim where the "only difference [from the claim] consists of a reduction in the amount sought" in the complaint that was "entirely attributable to the settlement agreement" and "resulting examination by the DCAA"). Thus, A&G's settlement with Blackstock and substitution of the alleged settlement amount instead of the higher amount relating to Blackstock's work in the original claim does not present a "new claim." [8]

Second, the Navy's primary concern regarding the Blackstock and Great American lawsuits goes to the merits of this appeal, not jurisdiction. For example, the Navy alleges that, while A&G's claim did not include a specific dollar figure attributable to Blackstock's claims on the Contract, Great American and Blackstock asserted that A&G owed much lower amounts to Blackstock – alleging A&G owed Blackstock $193,603 (gov't mot., attach. 2 – *Great Am.* compl. ¶ 19) or $190,626 (gov't mot., attach. 3 – *Blackstock* compl. ¶¶ 9-17). (Gov't mot. at 6-7) And, A&G's complaint seeks $500,000 for Blackstock's costs under the Contract based on the settlement. (Compl. ¶ 41) However, this is not a "new theory" posed by A&G as the Navy suggests, but rather relates to the question of quantum owed if A&G succeeds in its appeal (gov't mot. at 7). Whether this Board should award $500,000 regarding Blackstock's costs (rather than the lesser sums alleged in the *Blackstock* and *Great American* complaints) or some other amount goes to the merits of A&G's entitlement, not this Board's jurisdiction. *See Am. Gen. Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,640 (proof of entitlement goes to the merits, not jurisdiction).

Ultimately, none of the information identified by the Navy materially differs from the facts or legal theory of relief underlying A&G's claim, nor does it require consideration of a different or unrelated set of operative facts. *See Lee's Ford Dock*, 865 F.3d at 1369. While the manner of calculating damages may have changed between the

---

[8] Although the time frame for the period identified in the complaint runs from April 2015 through August 2018 (beyond the January 2017 date of A&G's certified claim), A&G's complaint alleges that the costs for that additional time period results from the same operative defective specifications allegation in the certified claim. *Tecom, Inc. v. United States*, 732 F.2d 935, 937-38 (Fed. Cir. 1984) (permitting consideration of increase to claim "on the basis of new information on damages" after claim submitted by contractor without requiring contractor to certify new information with contracting officer); *S.C. Pub. Serv. Auth.*, ASBCA No. 53701, 04-2 BCA ¶ 32,651 at 161,600 ("Since the claim for past costs has been properly presented, appellant may revise it or present proof of a greater amount if based on information not reasonably available when the claim was submitted.").

claim and the complaint – total cost method versus a daily conditions rate applied over three and one half years – the underlying operative facts did not.

## CONCLUSION

The government's motion to dismiss for lack of jurisdiction is denied.

Dated:  July 1, 2021

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61916, Appeal of Anthony and Gordon Construction Co., rendered in conformance with the Board's Charter.

Dated:  July 2, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals