ARMED SERVICES BOARD OF CONTRACT APPEAL

Appeal of -                                             )
                                                        )
VESEQU LLC                                              )        ASBCA No. 64468
                                                        )
Under Contract No. SP8000-25-C-0005        )

APPEARANCE FOR THE APPELLANT:            Mr. Jason Shadburn
                                                          VESEQU, LLC
                                                          Los Angeles, CA

APPEARANCES FOR THE GOVERNMENT:          Steven M. Sosko, Esq.
                                                          DLA Chief Trial Attorney
                                                         Rachel M. Noble, Esq.
                                                          Trial Attorney
                                                          DLA Land and Maritime
                                                         Columbus, OH

OPINION BY ADMINISTRATIVE JUDGE SWEET

On April 10, 2026, the Defense Logistics Agency (DLA or government) filed a motion to dismiss—or in the alternative to strike—two of the causes of action in the complaint (Complaint) of *pro se* appellant VESEQU LLC (VESEQU) for lack of jurisdiction (Motion). Because the causes of action assert new claims, we grant the Motion.[1]

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On June 17, 2025, DLA awarded Contract No. SP8000-25-C-0005 (Contract) for VESEQU to acquire and make available to DLA Strategic Materials certain web-based subscriptions, publications, and periodicals, including, *inter alia*, Bloomberg Professional Service B-Unit Device, Platts Metal Daily (Nonferrous Market Data and Market Insight), Benchmark Minerals Intelligence-Industrial Minerals, and the Project Blue Reports (collectively, Cancelled Subscriptions) (R4, tab 6 at 1-2, 4-5, 8-9; tab 6A).

---

[1] On May 8, 2026, VESEQU filed a motion for leave to file a sur-reply. We grant that motion because the government raises a new argument regarding different remedies in its reply brief (*compare* gov't mot. at 5-7 *with* gov't reply at 4-6).

2. On October 27, 2025, the contracting officer (CO) issued a stop work order pursuant to Federal Acquisition Regulation (FAR) 52.242-15, which directed VESEQU to stop work on the Cancelled Subscriptions (R4, tab 18A at 1-2).

3. On November 4, 2025, VESEQU submitted a request for an equitable adjustment (REA) (R4, tab 19 at 1-4). Under the "Request for Relief" section, the REA asserted that:

> VESEQU LLC respectfully requests an equitable adjustment in the amount of $70,930.80 to recover direct and indirect costs reasonably incurred as a direct result of the Government's Stop Work Order under Contract SP8000-25-C-0005 (P00003).
>
> This request includes no profit or unallowable cost elements and is supported by contemporaneous documentation.

(*Id.* at 4)

4. On November 17, 2025, DLA partially terminated the Contract for convenience pursuant to FAR 52.212-4(l), terminating the Cancelled Subscriptions (R4, tabs 23A-23C).

5. On December 18, 2025, VESEQU converted its REA into a claim to the CO (Claim) (R4, tab 24 at 1-2). The Claim asserted that VESEQU "hereby converts its REA into a claim under the Contract Disputes Act and formally requests a Contracting Officer's Final Decision on its claim in the amount of $70,930.80 arising from the Stop Work Order issued under Contract SP8000-25-C-0005 (Modification P00003)" (*id.* at 2). The Claim alleged that:

> VESEQU fully recognizes the Government's discretion to pursue its acquisition strategy. The concern is not the existence of resolicitation activity, but the sequencing and prioritization. [DLA] has demonstrated the ability to staff and advance replacement procurement actions for these subscriptions, while VESEQU's incurred, documented pre-Stop Work costs for the same scope of work remain unresolved.
>
> From both a practical and fairness standpoint this creates a disconnect. If resources exist to resolicit and advance replacement actions, it is reasonable to expect parallel

2

capacity to resolve the associated Stop Work claim tied to the original award.

(*Id.* at 2)  The Claim contained no allegation that the subscriptions required DLA to execute subscription agreements, or that DLA prohibited the execution of such agreements (*id*. at 1-34).  Nor did the Claim contain any factual allegations related to the execution of subscription agreements (*id.*).  VESEQU attached the REA to the Claim, including the portion of the REA indicating that "[t]his request includes no profit" (*id.* at 30).

6.  On February 20, 2026, the CO issued a final decision (COFD) denying the Claim (R4, tab 29A at 1, 5).

7.  That same day, VESEQU appealed the COFD to the Board.  In its Complaint, VESEQU alleges four Counts:  (I) termination settlement under FAR 52.212-4(l); (II) government-caused impasse/constructive change; (III) equitable adjustment under FAR 52.242-15(d) (stop work order); and (IV) bad faith termination-government re-solicitation of identical requirements (compl. ¶¶ 7-34).  In particular, Count II alleges that there was a defective specification, constructive change, and commercial impossibility because, by their nature, the subscriptions required DLA to execute subscription agreements, but DLA prohibited the execution of such agreements (*id.* ¶¶ 20-22).  Count IV alleges that the termination for convenience was motivated by a bad faith intent to re-acquire the Cancelled Subscriptions outside of the Contract at a lower price because DLA immediately reacquired the Cancelled Subscriptions after the termination for convenience (*id.* at ¶¶ 31-33).  Count IV also alleges that "[i]f the Board finds bad faith, VESEQU is entitled to breach of contract damages, including lost profits on the terminated contract work that would have been performed absent the wrongful termination, in addition to all costs and damages recoverable under Counts I through III" (*id.* at ¶ 34).  In the damages section, the Complaint states that VESEQU is seeking termination settlement costs under Counts I through III, reasonable profit on the work performed, settlement and claim preparation costs, lost profits on the terminated contract under Count IV, and CDA interest (*id.* at ¶ 35).  The Complaint contains no allegations that there is new information on damages that was not reasonably available to VESEQU when it submitted its Claim that supports the addition of a claim for lost profit damages (*id.* at ¶¶ 34-35).

## DECISION

The government's Motion is granted because, since Counts II and IV raise new claims, we do not possess jurisdiction over those claims.  In order to give "the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request," *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015), the submission of a

claim is a jurisdictional prerequisite for an appeal to the Board under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq*. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995). Thus, we do not possess jurisdiction over new claims that a contractor did not present to the CO. *Lockheed Martin Aircraft Ctr.,* ASBCA No. 55164, 07-1 BCA ¶ 33,472 at 165,934. We treat causes of action as involving new claims "if they *either* request different remedies (whether monetary or nonmonetary) *or* assert grounds that are materially different from each other factually or legally." *ECC Int'l LLC*, ASBCA No. 60167, 2022 WL 509701 (Jan. 25, 2022) (quoting *K-Con Bldg. Sys.*, 778 F.3d at 1005) (emphasis in original). Under the different asserted grounds component, a claim presented to the Board is a new claim if it is not based upon facts that are common, or related, to the facts that the contractor raised in its claim to the CO. *Lockheed Martin*, 07-1 BCA ¶ 33,472 at 165,934. In order to raise a bad faith termination claim, a claim need only allege, in effect, unfair and deceptive treatment; it need not use the words "bad faith." *Lockheed Martin*, 07-1 BCA ¶ 33,472 at 165,934. Under the different remedies component, "claims seeking different types of remedy, such as expectation damages versus consequential damages, may be determined to be separate claims." *ECC Int'l*, 2022 WL 509701 (citing *K-Con Bldg. Sys.*, 778 F.3d at 1006).[2] However, the standard is not so rigid as to preclude all litigation adjustments in amounts "based upon matters developed in litigation." *K-Con Bldg. Sys.*, 778 F.3d at 1006 (quoting *Tecom, Inc. v. United States*, 732 F.2d 935, 937-38 (Fed. Cir. 1984)). Here, as discussed in greater detail below, both Counts II and IV assert new claims.

I     Count II Asserts a New Claim

Count II asserts grounds that are materially different from those asserted in the Claim because Count II is not based upon facts that are common, or related, to the facts that VESEQU raised in its Claim. The factual basis of Count II is that the subscriptions required DLA to execute subscription agreements, and that DLA prohibited the execution of such agreements (SOF ¶ 7). However, the Claim contained no allegation that the subscriptions required DLA to execute subscription agreements, or that DLA prohibited the execution of such agreements (SOF ¶ 5). Indeed, the Claim contained no factual allegations related to the execution of subscription

---

[2] Expectation damages are damages that provide the non-breaching party with the benefits he expected from a contract, and may include anticipated lost profits on that contract. *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380 (Fed. Cir. 2001). However, anticipatory lost profit damages are not available for a termination for convenience absent a showing of bad faith or an abuse of discretion. *Nexagen Networks, Inc.*, ASBCA No. 60641, 19-1 BCA ¶ 37,258 at 181,328. Consequential damages are losses that do not flow directly or immediately from an injurious act, but that result indirectly from the act, such as lost profits on other contracts. *Id.*

4

agreements at all (*id.*). Because the Claim did not raise the substantive issue of whether DLA prohibited the execution of required subscription agreements, Count II raises a new claim over which we do not possess jurisdiction. *See Lockheed Martin*, 07-1 BCA ¶ 33,472 at 165,934. As a result, VESEQU denied the CO an adequate pre-suit opportunity to rule on VESEQU's request knowing that the substantive issue raised by VESEQU was that DLA prohibited the execution of required subscription agreements. *See K-Con Bldg. Sys.*, 778 F.3d at 1006.

## II.     Count IV Asserts a New Claim

While Count IV does not assert grounds that are materially different from those asserted in the Claim, it nevertheless asserts a new claim because it seeks a different type of remedy than the Claim sought. First, Count IV does not assert grounds that are materially different from those asserted in the Claim because Count IV is based upon facts that are common, or related, to the facts that VESEQU raised in its Claim. The factual basis of Count IV is that it was unfair for DLA to reacquire the terminated subscriptions immediately after the termination for convenience (SOF ¶ 7). Similarly, the Claim asserted that the sequencing and prioritization of the resolicitation was unfair (SOF ¶ 5). The Claim did not use the magic words "bad faith" (SOF ¶ 5), but that fact does not establish that Count IV asserts grounds that are materially different from those asserted in the Claim. *See Lockheed Martin*, 07-1 BCA ¶ 33,472 at 165,934. Rather, Count IV is based upon facts that are common, or related, to the facts that VESEQU raised in its Claim because its factual basis of an unfair reacquisition of the terminated subscriptions relates to the facts regarding an unfair reacquisition of the terminated subscriptions that VESEQU raised in its Claim. *Id.*; (SOF ¶ 7). Thus, Count IV does not assert grounds that are materially different from those asserted in the Claim.

However, Count IV seeks a different type of remedy than the Claim sought. Count IV expressly indicates that it is seeking "*lost profits* on the terminated contract work that would have been performed absent the wrongful termination" (SOF ¶ 7 (emphasis added)). However, the Claim did not seek lost profits. On the contrary, the Claim expressly stated that "[t]his request includes *no profit*" (SOF ¶ 5 (emphasis added)). VESEQU has made no showing that Count IV's addition of the lost profit damages is due to new information on damages that was not reasonably available to it when it submitted its Claim (SOF ¶ 7; app. sur-reply). Therefore, Count IV seeks a different type of remedy than the Claim, such that Count IV is a new claim over which we do not possess jurisdiction. *See GAP Instrument Corp.*, ASBCA No. 55041, 07-1 BCA ¶ 33,567 at 166,280 (citing *Tecom*, 732 F.2d at 938). As a result, VESEQU denied the CO an adequate pre-suit opportunity to rule on the claim raised in Count IV knowing the relief sought was lost profits. *See K-Con Bldg. Sys.*, 778 F.3d at 1006.

VESEQU argues that it indicated it was not seeking lost profits in its REA; not in its Claim (app. sur-reply at 2). However, we have recognized that a contractor

incorporates an REA into its claim when it attaches and references that REA as part of its claim. *The Pub. Warehousing Co.*, ASBCA No. 56022, 11-2 BCA ¶ 34,788 at 171,225. Here, the Claim both referenced and attached the REA and failed to state that VESEQU was adding a claim for lost profit (SOF ¶ 5). Thus, the Claim incorporated the REA, such that the REA's indication that VESEQU was not seeking lost profit is part of the Claim. *See Pub. Warehousing*, 11-2 BCA ¶ 34,788 at 171,225.

VESEQU also argues that the statement that VESEQU was not seeking lost profit appeared in a section describing the methodology for calculating actual allowable costs incurred; not in sections electing or waiving equitable remedies (app. sur-reply at 2). In actuality, the statement that VESEQU was not seeking lost profit appeared in a section entitled "Request for Relief," and thus, it defines the scope of the remedies sought (SOF ¶ 3). As discussed above, because those remedies were different than the remedies sought by Count IV, Count IV asserts a new claim (SOF ¶¶ 5, 7).

Finally, VESEQU argues that we should defer ruling on the Motion pending DLA's responses to VESEQU's discovery requests (app. sur-reply at 3). However, the cited discovery requests only seek information on whether DLA terminated the contract in bad faith; they do not seek new information on damages that was not reasonably available to VESEQU when it submitted its Claim (*id.*). As discussed in greater detail above, the jurisdictional defect in Count IV is not that Count IV asserts a bad faith claim that materially differs from the allegations in the Claim; it is that Count IV seeks a different type of remedy for that alleged bad faith termination than the Claim sought by seeking lost profits (SOF ¶¶ 5, 7). Thus, the information that VESEQU seeks through the cited discovery requests will not resolve the jurisdictional defect.

6

CONCLUSION

For the reasons discussed above, the government's motion to dismiss, or in the alternative to strike, is granted. We strike Counts II and IV of the Complaint without prejudice.

Dated:  May 21, 2026

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 64468, Appeal of VESEQU LLC, rendered in conformance with the Board's Charter.

Dated:  May 21, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals